MARTHA F. THROWER, plaintiff in error, vs. AMANDA E. WOOD, defendant in error.

1. Where an act of the legislature was passed in 1853, reciting that B was the illegitimate child of A, and the act changed B's sirname to that of A, and legitimated him as the child of A; and A afterwards, in 1835, made to B a deed to a parcel of land by the name given to him in the act of the legislature, and the deed was to him as the child of A, and in consideration of the natural love he bore to him as such child:

Held, that the law will presume A assented to or procured the act of the legislature.

2. Whether, as a general rule, such an act does or does not affect persons not assenting to or procuring it, yet, in a suit for and concerning the very land conveyed by the deed, those claiming the land as the legal heirs of B, under and by virtue of the deed, cannot deny that B was the child of A. The facts that the deed was to B in his own name, and as the child of A, and in consideration of A's natural love to him, as such, appearing as they do on the face of the deed, are conclusive in a suit for the land conveyed, of the relationship, as against any person claiming the land under or by virtue of the deed.

Laws. Legitimation. Presumption. Estoppel. Deeds. Before Judge HOPKINS. Fulton Superior Court. October Term, 1873.

Thrower *vs.* Wood.

Amanda E. Wood instituted proceedings against Martha F. Thrower, as tenant in common with her, for the partition of a lot of land in the county of Fulton, claiming a title to one-sixth undivided interest in the same. The respondent objected to said partition, claiming title to the entire property.

1st. The petitioner introduced a deed from J. F. Trout to Thomas A. Lyon and Warner Lyon, dated August 15th, 1852, conveying to them, as tenants in common, a portion of the lot of land described in the plaintiff's petition.

2d. A deed from Thomas S. Baker, John S. Wilcox and Charles Baker, to Thomas A Lyon and Warner Lyon, conveying to them, as tenants in common, the remaining portion of said premises, dated May 16th, 1855.

3d. A deed of gift from Warner Lyon to Thomas A. Lyon, Levi Jackson Lyon, and Thomas A. Lyon, as trustee for Martha F. Lyon, conveying to them a one-half undivided interest in said lot of land, "for and in consideration of the natural love and affection which he, the said Warner Lyon, hath and beareth to and for his said children, Thomas A., Levi Jackson, and Martha F. Lyon." This is the only consideration expressed in said deed. The conveying words are, "hath given, delivered and conveyed, and by these presents doth give, deliver and convey." The deed is dated December 6th, 1855, and was recorded December 17th, 1855. The aforesaid three deeds were produced upon the trial by the respondent upon notice from the petitioner.

4th. An agreed copy of the will of Thomas A. Lyon, in which he gives and bequeaths all of his property, both real and personal, to Martha F. Lyon, after reserving enough to pay his just debts and funeral expenses, during her life, and then to her children. The above will was properly executed December 15th, 1857.

5th. A deed from John T. Jinkins to Amanda E. Wood, the petitioner, dated February 25th, 1871, conveying to her all his right, title and interest, to-wit: the undivided one-third of the one-half of the lot of land aforesaid.

6th. A deed from T. K. P. Worthington and Mary Jane

Northcut to Amanda E. Wood, the plaintiff, conveying to her all their right, title and interest to the said lot of land, dated November 21st, 1870.

7th. The answers of Mary Kilpatrick to interrogatories as follows:

I knew Levi Jackson Lyon; I knew Elizabeth Worthington; I have been informed and believe that Levi Jackson Lyon is dead; I do not recollect when he died; I believe he died during the war—shortly before the close of the war; he was single at the time of his death; he had two sisters and one brother living at the time of his death; the name of his brother was Thomas; the name of one sister was Jane, who was married at the time to William Northcut; the name of the other sister was Charlotte, who was married at that time to Thomas Jinkins; Charlotte has died since the death of Levi Jackson Lyon; I forget the date of her death; the husband of Charlotte, Thomas Jinkins, was living at the time of the death of Charlotte, and is living now, to the best of my knowledge and belief; Levi Jackson Lyon was my nephew; his mother was my sister; both his father and mother are dead; his father's name was Jacob Worthington; he died in the Mexican war—I forget the year; his mother's name was Elizabeth Worthington; she died about ten or twelve years ago, after her husband died; I forget when Levi Jackson Lyon died; to the best of my knowledge and belief he was twenty or twenty-one years old; he was not married at the time of his death.

The petitioner here closed. The respondent first read in evidence the answers of Rachael S. Robertson and Mary M. Robinson to interrogatories as follows:

Mary M. Robinson knows Amanda Wood and Thomas Thrower, and Rachael S. Robertson knows Thomas Thrower; do not know the other parties; they both knew Levi Jackson Lyon, and from a strong family resemblance, believe that he was Warner Lyon's son. All they know, in addition to the above, going to show he was Warner Lyon's son, is that Warner Lyon brought him to the house of Rachael S. Robertson,

Thrower *vs.* Wood.

one of the witnesses, paid his board, clothed him, and sent him to school.

*Cross-examined:* They first became acquainted with Levi Jackson Lyon in 1847 or 1848. They were not acquainted with Jacob Worthington nor Elizabeth Worthington; neither were they present when the said Levi Jackson Lyon was begotten and born. Neither witness knows of the death of Jacob Worthington, nor of the death of Levi Jackson Lyon's mother. Both witnesses think Levi Jackson Lyon died in 1856 or 1857. Both answer they were not acquainted with Jacob or Elizabeth Worthington. They did not know anything of Jacob and Elizabeth Worthington living together, nor about Jacob Worthington's volunteering in the Mexican war, nor about his dying there. All they ever heard Warner Lyon say about the parentage of Levi Jackson Lyon was subsequent to the Mexican war, and all they ever knew him to do for said Levi Jackson Lyon, was subsequent to said war, which was in 1847 or 1848, at the time the said Warner Lyon brought him to the house of witness, Rachael S. Robertson.

2d. The answers of Elizabeth Pruitt to interrogatories, as follows: I know none of the parties. I was acquainted with Jacob and Elizabeth Worthington. Said Jacob was a clever, sober man, until his wife, Elizabeth conducted herself as she did. I know nothing myself, except that I have seen her and Warner Lyon go into the woods together and come out again. Does not know what they did. Have seen him go to her house a few times after she and her husband parted. This going to the house was after Levi Jackson Lyon was born. She knew them both fifteen or twenty years. Knew him in Walton and Campbell counties. They were married in Campbell. She heard said Elizabeth Worthington admit that Warner Lyon was the father of Levi Jackson Lyon, sometimes in earnest and sometimes in jest. Warner Lyon treated the child as his own. Said Elizabeth Worthington was under a very bad character. She was a dissipated woman. She had been separated from her husband about a year or more

when her last child was born. Has heard them dispute and quarrel about Warner Lyon. She was not a witness in the effort of Elizabeth Worthington to get a land warrant. Was applied to but declined.

*Cross-examined:* Elizabeth and her husband, Jacob Worthington, were living together when Levi Jackson Lyon was begotten and born, but they separated before he went off to the Mexican war. Does not know how long that was after the birth of the said Levi Jackson Lyon. All that she has stated she heard from others, except their separation, going into the woods together and quarreling, which she heard and saw herself. Has not stated that Jacob Worthington was not the father of Levi Jackson Lyon, for she does not know. Has no personal knowledge that any person had sexual intercourse with the said Elizabeth Worthington while she and her husband were living together.

3d. The depositions of W. H. Kilpatrick, as follows: I knew nothing of the relation, friendship, intimacy and connection which existed between Warner Lyon and Elizabeth Worthington; Elizabeth Worthington is my wife's sister; the character of Elizabeth Worthington, about the time Levi Jackson Lyon was got and born, so far as I know, was as fair as that of any poor people; Warner Lyon took the child and put him to school; Jacob Worthington and his wife did not separate until he went into the army, so far as I know; I think the child was running about when he went into the army.

*Cross-examined:* I think Worthington and his wife lived together as man and wife until he went to the army, about the time Levi Jackson Lyon was begotten. Worthington was generally about home, and lived with his family until he went to the army.

4th. The depositions of W. M. Butt, as follows: I knew Levi Jackson Lyon, and his mother, Elizabeth Worthington, about the time said Levi Jackson Lyon was begotten and born. I lived within one mile of them, at Pine Mountain, in Carroll county, Georgia. I knew Warner Lyon, and he

Thrower *vs.* Wood.

resided nearer to Elizabeth Worthington than I did. Warner Lyon boarded said Levi Jackson Lyon at my house, and paid his board.

*Cross-examined:* Jacob and Elizabeth Worthington lived together as man and wife about three years before the birth of Levi Jackson Lyon, and up to the time that it was understood said Jacob went to the army, which was some time in the fall or summer of 1847. Said Jacob was usually about home about the time that Levi Jackson Lyon was begotten.

5th. The answers of Mary Kilpatrick to interrogatories, as follows: She knows Amanda Wood and Thomas Thrower; does not know Martha Thrower; she was acquainted with Elizabeth Worthington from the time of her birth until her death, which was about thirty years, from 1830 to 1860; she was her sister. She knows nothing of the conduct of Elizabeth Worthington with Warner Lyon about the time Levi Jackson Lyon was begotten and born, except that she saw Warner Lyon at her house occasionally. She was living with her husband, Jacob Worthington; knows nothing going to show that Warner Lyon was the father of the child. Never heard said Elizabeth admit that Warner Lyon was the father of the child; but when she came to see witness, the latter reproached her about the rumors about her. She replied that "want leads and the devil drives." Does not know that Warner Lyon ever treated the boy as his child; knows that he gave the boy a few clothes, *i. e.*, a suit or two. There was a disagreement between said Elizabeth and Jacob, her husband, about the time Levi Jackson Lyon was born, about the rumors of intimacy between said Elizabeth and Warner Lyon; does not know how long they lived together afterwards, nor that they separated until Worthington went to the war; does not know anything further going to show that he was Warner Lyon's child, nor that he was so regarded by his sister, Warner Lyon or anybody else. Knows of her own knowledge that said Elizabeth had another child after her husband left for Mexico; said child was born more than a year after her husband left; does not know whose child it was reported to be.

*Cross-examined:* All the children born unto Worthington and his wife up to the time her husband left for the Mexican war were recognized by them as their children, and they lived peaceably and quietly together, so far as she knows, up to the time he left for the war, except the family quarrel about the rumors about Warner Lyon. Levi Jackson Lyon was recognized by Jacob Worthington as his child up to the time he left for the Mexican war, and he was usually about the house the time said Levi was begotten and born. The said Jacob and his wife were lawfully married in Campbell county, but does not remember the date, and lived together, as far as she knows, up to the time said Worthington left for the Mexican war. Has stated all she knows going to show that he was said Jacob's child, lawfully begotten. Never heard his mother say that he was the said Jacob's child, but always, when asked, she would say that was best known to herself.

6th. An act of the legislature of Georgia, approved February 20th, 1854, found on page 489 of the acts of 1853-4, as follows:

"Section 3. And be it further enacted, by the authority aforesaid, that the name of Levi Jackson Worthington, of the county of DeKalb, be changed to that of Levi Jackson Lyon, and that he be fully legitimated and made an heir at law of Warner Lyon, his reputed father, and entitled to all the rights and privileges he would have enjoyed, had he been born in lawful wedlock, and be made capable of inheriting the estate, both real and personal, of Warner Lyon, his reputed father."

The jury found for the petitioner. The respondent moved for a new trial upon the following grounds, to-wit:

1st. Because the verdict was contrary to law.

2d. Because the verdict was contrary to the evidence, and manifestly and decidedly against the weight of the evidence, and without any evidence to support it.

3d. Because the court erred in charging the jury "that the deed of gift from Warner Lyon to Thomas A. Lyon and

Levi Jackson Lyon, and Thomas A. Lyon, trustee for Martha F. Lyon, December 6th, 1855, conveyed to said Levi Jackson Lyon the title to a one-sixth undivided interest in the said land, described in the petitioner's declaration, if they should find that such a deed was executed by Warner Lyon."

4th. Because the court erred in charging the jury as follows, to-wit : " If you should believe from the evidence that Elizabeth Worthington was the mother of Levi Jackson Lyon, and was the lawful wife of Jacob Worthington, and that at the time said Levi Jackson Lyon was begotten and born, her husband had access to her, there would be a *strong presumption* in favor of his legitimacy. Has it been shown to your satisfaction that Levi Jackson Lyon was the illegitimate child of Warner Lyon? The proof must establish the fact clearly and satisfactorily to your minds before you can say by your verdict that said Levi Jackson Lyon was an illegitimate child."

5th. Because the court erred in charging the jury "that if they believed that the said Levi Jackson Lyon died intestate, leaving no wife or issue, and at the time of his death he had living two sisters, Jane Northcut, who was married at the time to William Northcut, and Charlotte Jinkins, who was married at the time to William Jinkins, and one brother, Thomas Worthington, and that he, the said Levi Jackson Lyon, was the legitimate child, born in lawful wedlock, of Jacob and Elizabeth Worthington, that, in that event, the title to the one-sixth of said land described, descended to his said two sisters and one brother, they being his heirs at law."

6th. Because the court erred in refusing a motion for a nonsuit made by the defendant's counsel when the plaintiff closed her case.

7th. Because the court erred in charging the jury as follows : " The act of the legislature legitimating Levi Jackson Lyon, was admitted merely to show the fact that Warner Lyon had him legitimated, and its recitals are not evidence of the fact that Levi Jackson Lyon was the illegitimate child of Warner Lyon."

The motion was overruled and respondent excepted.

Thrower *vs.* Wood.

D. F. & W. R. HAMMOND, for plaintiff in error.

COLLIER, MYNATT & COLLIER, for defendant.

McCAY, Judge.

Were the dispute between the parties in this case a dispute between either of them and a third person, or even between themselves, about anything else than *this particular land,* we should not hesitate to affirm this judgment. · The charge of the court, as to the presumption of legitimacy, where there is a possibility of access, is not stronger than the Code, section 1786. The words, strong presumption and clear evidence are the very words used by the codifiers. Nor do we think the judge, by adding the word satisfactory, has given any expansion to the rule. " Clear and satisfactory " is no stronger than "clear." Indeed, it rarely strengthens a statement, but rather weakens it, to heap up adjectives, when one that conveys the whole idea has been already used. So, too, as to the presumptions arising from the act of 1855. We are not prepared to say that a private act of the legislature is operative, as a general rule, in any way against those who are neither parties to its procurement, or in some way privies to it. It is true that there are authorities giving absolute verity to an act of Parliament, and there are expressions used even by our own judges looking the same way. But the express division of powers in our constitution, by which the legislature only has legislative power, is a large qualification upon these ideas, and whilst we are clear that such an act is not conclusive, except as we have said, we are not even prepared to say that it is even *prima facie* as against perfect strangers to it. But however this may be, as a general rule, both as to these presumptions against adulterine bastardy and in reference to private acts of the legislature as against strangers, we are of the opinion that in this case, under the facts disclosed by the record, the law bearing upon these points has not been administered.

1. As Warner Lyon, after the act of 1855 was passed, has, by his deed of December of that year, evidently acted on it by making the deed under which both parties in this suit claim their rights, it is a very fair presumption that he procured the act of 1855 to be passed. This deed is to the grantee in the name the act gives him, and as the child of Warner Lyon. As the grantee had neither the name nor the legal relationship without the act, it is but a reasonable in-. ference to assume that Warner Lyon either procured or assented to its passage.

2. Both of the parties in this case set up title to the land in dispute, under the deed of Warner Lyon to his three *children* made to them after the passage of the act of February, 1855, to-wit: December 6th, 1855, and that deed is in terms in consideration of the *natural* love and *affection* he, Warner Lyon, has to and for such *three children.* One of these children was Levi Jackson Lyon, the assumed ancestor of the defendant in error. Her claim to the land in dispute is dependent on that deed; it is her muniment of title, the very foundation of her right. If she has any *status* in court in this dispute, she gets it under that deed. The land in dispute is in the possession of the Lyon family, who got it and hold it under the same deed. Were it not for that deed the land in dispute would belong to neither of the parties to the suit. It would have remained Warner Lyon's. He might have sold it or given it away, or at his death it would, under our law, have been assets for the payment of his debts, and distribution among his heirs, with a right of dower in his widow.

The case before us is simply this. In a dispute about a parcel of land, when both parties claim under the same deed, is it competent for one of them to set up title under the deed, and in the same breath deny the very terms of it? Is it competent for the defendant in error to insist, as she must do, that Levi Jackson Lyon acquired title to the land in dispute by virtue of the deed of December 6th, 1855, from his father, Warner Lyon, and in the very same breath say I claim the

land by purchase from the Worthingtons who are the legal heirs of Levi Jackson Lyon, *because* the *deed recites* an *untruth* as to the paternity of Levi Jackson Lyon, because he was *not* the child of Warner Lyon; his name was not *Levi Jackson Lyon,* but Levi Jackson Worthington, and Warner Lyon could not and did not have for him the natural love and affection of a father? It seems to us that to state such a proposition is enough. It answers itself. One cannot claim under deed and deny its terms. The parties to a deed and their privies are estopped by its recitals: *McClesky vs. Leadbetter,* 1 *Kelly,* 557.

As a matter of course, the recital, to be an estoppel, must be something material. Here it is the very essence of the deed. Without the recital it would never have been made. Upon the very face of the deed it is stated that the sole and only motive of it, is the fact that Levi Jackson Lyon is the child of Warner Lyon. To deny this fact, is to strike at its very vitals, to destroy its foundation, to make it invalid, as without consideration. All deeds made and operating under the statute of uses, were, under the English law, required to be on their face, for a valuable or a good consideration. Before the statute of uses, they did not pass a legal title, they were only of force in equity, which enforced them because a valuable consideration having been paid, or they having been made in fulfillment of a duty to provide for a kinsman, the chancellor held the grantor bound in conscience to perform. Deeds made only for friendship or good will, stood on a different footing, and were not enforced by equity for want of this ingredient in them to bind the conscience of the grantor; and since the statute of uses, which in effect made such deeds legal titles, the uniform ruling of the English and American courts has been, that deeds of this kind—and all *our* deeds are such—must be for either a valuable or good consideration. And our Code, section 2690, has the same provision. A good consideration must be the love and affection of either blood or marriage: Cruise Digest, (Greenleaf,) book 4, page 24. Even the affection of a man for his bastard son, is not

sufficient: Blount *vs.* Blount, 2 Law Reports, 587. See this whole subject fully discussed in Shephard's Touchstone. The denial therefore, that Levi Jackson Lyon was the child of Warner Lyon, and the assertion that his name was not Lyon but Worthington, is a denial of a material part of the deed. It is a denial of the declared motive and purpose of the deed, and an assertion that its recitals upon that subject are untrue. The case, is, in our view, as strictly within the principle of an estoppel by deed as a case can be. It is not only within the letter but the spirit of the rule.

The petitioner in this case, comes into court claiming this land : 1st. Because the deed says Levi Jackson Lyon was the the child of Warner Lyon ; and 2d, because he was not the child of Warner Lyon. To get the property *into* the ancestor, it is necessary to show a deed declaring him such child, and then to prevent its taking the course the law gives it, if that were so, it is asserted that he was not such child. In our judgment this cannot be done. If the plaintiff relies on the deed, she cannot at the same time contradict it. She cannot come into the Lyon family, and having got property as one of it, take it out of the family line by the relationship that obtained it. Nor is this view of it met by saying that the deed may still be true, under the act of 1855, that is that Levi may be the child of Warner as to him, and not the child as to the Worthingtons, by construing the act as an adopting act, and not a legitimating act. This only shifts the estoppel from the deed to the act. The plaintiff below cannot go to the act for one purpose and claim title by it, and refuse to accept it entirely. Warner Lyon is only himself bound by the act because he assented to it, and he would not have done this except on its terms ; except upon the assumption of the very fact that is now denied. We do not say this defendant is bound by this act generally, but we do say she cannot set it up to get this land into Levi and then divert it from Lyon's line by denying it. She cannot plead either the act or the deed, and deny its material recitals. This act and its recitals, and this deed and its recitals, are necessities in order to get

the land in dispute *into* Levi, and it is neither justice to the Lyon family, nor is it law to pass it by inheritance out of the Lyon family, by denying these recitals. For these reasons we think this verdict wrong, and that in *this* case, and under the state of facts before the court, the judge erred in refusing to charge that the act of 1855 was evidence against the plaintiff. As the case stood before the jury, the evidence that Levi Jackson Lyon was the lawful child of Warner Lyon was conclusive. As against the plaintiff and for the purposes of this trial, to-wit: a dispute concerning this land, the plaintiff had herself, introduced evidence which was conclusive against her upon that question.

Judgment reversed.