(Decided 8th March, 1883.)

---

WILLIAM A. MOALE, Executor of WILLIAM A. MOALE, deceased, and in his own right as devisee, &c., and ELEANOR A., his Wife *vs.* ROBERT L. CUTTING, and others. ROBERT L. CUTTING, and others, excepting MARY WINCHESTER MOALE *vs.* WILLIAM A. MOALE, Executor of WILLIAM A. MOALE, deceased, and in his own right as devisee, and ELEANOR A., his Wife.

*Execution and attestation of a Will—Construction of a Will— Power of Sale—Sale when absolutely necessary—Gift by a Testator to his son, as an Advance in part of his Share, not chargeable with Interest—Liability of the Corpus of Testator's estate to supply Deficiency of revenues to pay Annuities charged on the estate—Power of Sale—Executor to act under the direction of the Court.*

The fact that the witnesses to a will have signed above instead of below the words designating attestation, cannot affect the validity of the attestation when it is clearly manifest that they signed for the purpose of attestation..

Although the testator may not have signed in the presence of all the witnesses at once, and the witnesses did not in fact write their names all at one and the same time, yet if the testator acknowleged his signature and declared it his will to all at once, and those who had before written their names as witnesses, then and there reaffirmed the same, this is an effective execution and attestation in accordance with the requirements of law.

Moale, Ex'r, &c. *vs.* Cutting, *et al.*

The omission of further words of attestation after the word "witness," to the left of the testator's signature, may be supplied in the probate, and it is not such an omission as should invalidate the attestation.

By the will and codicil of a testator it was provided substantially, that the clear income of all the residuary real and personal estate of the testator was to be applied by his executor to the expenses of the management of the same during the lifetime of the widow of the testator, and to the payment of taxes thereon, and to the discharge of an annuity to said widow, and another to the executor during the life of the widow, and thereafter as to one-third part of the surplus, if any, to the use of the executor in his own right, as to one-third thereof to the use of the testator's daughter J., and as to the remaining one-third thereof to the testator's daughter E. The will contained the following clause : " I authorize and empower my executor to lease any part, or all of my estate, with the consent of my daughters, at its fair value, and where it is absolutely necessary, to sell the same," &c.   On a bill filed by the executor for the administration of the trusts of the will under the direction of the Court, and for a sale of a portion of the estate on the ground that such sale would be advantageous to the parties, and a resistance to said sale on the part of the daughters, it was HELD :

1st. That although it might be possible that a sale of some portion of the unproductive estate would greatly swell the immediate revenues of the estate ; and the interests of all parties might possibly be promoted thereby, yet unless *all* parties in interest could agree respecting it, the executor could not sell in the then condition of the estate, when no " absolute necessity " demanded it, and the Court ought not to order it.

2nd. That the necessity contemplated was an imperative necessity ; and being such must refer to some pressing exigency of the estate, growing out of deficiency of revenue to meet the demands upon it, such as might be brought about by some unexpected contingency or disaster.

3rd. That what might be done if all the parties in interest (including the widow) were agreed, the Court was not then called upon to consider.

The codicil to said will contained the following clause : " Since making the foregoing will I have given to my son W. A. M., thirty thousand dollars in Virginia coupon bonds, and Peoples and Consumers'

Moale, Ex'r, &c. vs. Cutting, et al.

Gas stock, which sum of thirty thousand dollars I direct shall be deducted from the said W. A. M's share of my estate." HELD:

That it was only the designated amount of thirty thousand ·dollars that the testator directed to be deducted from the son's share. To that extent he intended it to be a payment in advance of so much of his share of the estate, and it was to be treated in the same manner as advances technically so are treated, and which are not charged with interest.

In regard to the two annuities created by the will, the language used in both cases was: "I charge my estate with an annuity," &c. In the clause relating to the wife it was followed by the language, "to be paid out of the income of my estate"; but in the clause relating to the son that language was not used after declaring the charge. HELD:

1st. That in the face of such direct expression of intent to "charge his estate," there could be no doubt that if by any fortuity the revenues of the estate, after paying taxes and other necessary expenses, fell short of paying the annuities, the corpus of the estate would be bound for the deficiency.

2nd. That there was no room for doubt that, such a contingency happening would present such case of necessity, as would meet the intention of the testator in respect to the power of sale given to the son, and that in such emergency he might exercise such power.

3rd. That should such emergency arise, having brought the trust into Court to be administered under its direction, he should act under the direction of the Court, whether to sell enough to make an additional annual income to meet the deficit, or only so much as will meet the immediate demand, which of course must depend on the causes for the deficiency, and the likelihood of its recurrence and continuance.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ALVEY, ROBINSON, and IRVING. J.

J. I. Alexander, and I. Nevett Steele, for Moale, ex'r, &c.

_Charles J. M. Gwinn_, for Cutting and others.

IRVING, J., delivered the opinion of the Court.

The decision of the question presented by this appeal involves the construction of the will of William A. Moale, and for convenience sake in reference we have numbered the several clauses of the will from one to seventeen inclusive. By the first clause of the will the testator gives to his daughter, Judith Carter Cutting, a lot of ground on the west side of Charles street, by particular description, "for and during her life, and at her death, to her child, or children, and default of child or children surviving, to my daughter, Evelyn Byrd Burden, and my son, William A. Moale, Jr., should they survive, and if not to their children." By the second clause he gives another lot, on the west side of Charles street, by particular designation, to his daughter, Evelyn Byrd Burden for life, "and at her death, to her child or children surviving, and default of child or children surviving, then to my daughter, Judith Carter Cutting, and my son, William A. Moale, Jr., should they survive, and if not, then to their child or children."

By the third clause he gave his son, William A. Moale, Junior, his "late ground situated on the west side of Washington Place, No. 152," specially describing the same, "subject to the life estate of my beloved wife, on the dwelling or lot bought of Robert A. Lytle and wife, and subject to an annuity of two hundred and ten dollars, now owned by Samuel H. Taggart, on twenty-five feet of ground, being part of the lot of ground described as aforesaid, with all the improvements," &c. This devise was without limitation.

By the fourth and fifth clauses he disposes of his wines and liquors.

By the sixth clause he gives his pew "in St. Paul's Church," and his "vault in St. Thomas' Church Yard in Baltimore County," to his son, William A. Moale, Jr.

The seventh clause is in the following language : "I bequeath to my son, William A. Moale, Junior, all my household furniture, plate and glass of every description, in my dwelling, at the time of my death, for and during his life, and at his death to his child or children, and, default of child or children, then to my daughter Judith Carter Cutting, and Evelyn Byrd Burden, should they survive him, and if not, to their child or children ; the rest and residue of my estate, real, personal and mixed, no matter how constituted, I bequeath one-third part of the same to my beloved daughter, Judith Carter Cutting, during her life, and at her death to her child or children surviving, and in default of child or children surviving, then to my daughter Evelyn Byrd Burden, and my son William A. Moale, Junior, should they survive, and if not, then to their child or children."

The eighth clause is as follows : "I bequeath to my beloved daughter, Evelyn Byrd Burden, one-third part of the said estate, for and during her life, and at her death, to her child or children, surviving, and default of child or children surviving, to my daughter, Judith Carter Cutting, and my son, William A. Moale, Junior, should they survive, and if not then to their child or children."

By the ninth clause he bequeaths the remaining third of his estate to his son, William A. Moale, for life, and then to his surviving child or children, and in default of such child or children, with remainder over to his sisters and their children.

The tenth clause reads thus : "I charge my estate with an annuity of five thousand dollars, to be paid to my beloved wife, during life, out of the income of the estate after deducting taxes and expenses incident to the management of the same, in lieu of her dower in my real and personal estate."

The eleventh clause says : "I further charge my estate with an annuity of one thousand dollars to be paid during

the life-time of his mother, to my son, William A. Moale, Junior, in lieu of commissions, and for the management of the estate during the life-time of my beloved wife."

The twelfth clause charges his son to keep the vault in repair at the expense of the estate ; and the thirteenth appoints his son, William A. Moale, executor, and requests his sons-in-law to be the sureties on his bond.

14th. " I direct that the deed from my daughters, Judith Carter Cutting, and Evelyn Byrd Burden, for their interest in the dwelling and lot, No. 152 Washington Place, shall be placed on record immediately after my death, they having received a full equivalent in the two lots on north Charles street."

15th. "I authorize and empower my executor to lease any part or all of my estate, with the consent of my daughters, at its fair value, and where it is absolutely necessary, to sell the same, or where there is a covenant in the lease to redeem the lot of ground leased, provided, only, that the proceeds of such sale, or the lot of ground so redeemed, shall be invested in Government, State, or City stocks, or permanent ground rents of undoubted security, subject to the restrictive terms and tenor of this will, and the descent specified in the same for the benefit of the heirs aforesaid."

The sixteenth clause directs inscriptions on the tablets in his vault for his mother, brother and sons, and at the expense of his estate, and the seventeenth, and last clause, is as follows : " I request my son to give his mother the free and unrestricted use of the furniture, plate, glass, &c, &c., during her life, or so long as she shall keep house."

This will was dated the 20th of November, 1877, and was witnessed on the 21st of November, 1877.

On the 9th of August, 1880, the following codicil was made : " Since making the foregoing will I have given to my son, William A. Moale, thirty thousand dollars in Virginia coupon bonds, and Peoples and Consumers' Gas

stock, which sum of thirty thousand dollars I direct shall be deducted from the said William A. Moale's one-third share of my estate.

"The furniture, silver, wines, &c., bequeathed to William A. Moale during his life, and his third share of my estate agreeably to the foregoing will, I give him absolutely and without any entail."

The bill, which is filed by the executor as such, and in his own right as a devisee, together with his wife, alleges the will and codicil to have been duly executed and published, and alleges the death of the testator. It sets out the various provisions of the will, and alleges his qualification as executor, and files a copy of the inventory of the estate, and a schedule of the ground rents, and unimproved properties, of which the bill charges there is a large amount. It alleges that the personal estate and effects of the testator are more than sufficient to pay all debts, and that he is desirous of applying the same to the payment of annuities. It charges that the widow has elected to abide by the will and take the annuity left her, and prays the direction and assistance of the Court in raising the annuity to her and to him, and to provide for the same so as to exonerate the residue of the estate therefrom. The bill sets up the right of the executor to sell when absolutely necessary, and avers it is necessary to sell a certain portion of the estate. It then describes a parcel of land on Charles street, which the bill alleges it is absolutely necessary to sell, but suggests that doubts have arisen as to his power under the will, and asks the Court for a decree for such sale. It avers this parcel lies in a fashionable part of Baltimore, and is very desirable, and that he has had most eligible offers for it if he can give a good title to it; but charges that the defendants, his sisters, deny his power to sell under the will, and also deny that it is absolutely necessary to sell it, and insist it can be advantageously divided. The bill charges this parcel cannot be advantageously

divided without loss or injury to the parties. As to the residue of the real estate the bill charges that a partition can be made and is desirable, and asks for it. It alleges that Mrs. Cutting and Mrs. Burden, are only tenants for life, and that their children, presumptively entitled, are infants under the age of twenty-one years, and such partition cannot be had without the aid of a Court of equity. He asks the direction of the Court with respect to the deduction of the thirty thousand dollars given him and by the codicil directed to be deducted from his share of the residue. The bill asks the construction of the Court with respect to his trust and powers under it, and assistance and direction in executing the same. The widow, Mrs. Cutting, Mrs. Burden and their children, with their husbands, are made defendants, being all the parties in being who are interested in the matter.

Mrs. Moale, by her answer, admits that she has elected to abide by the will, and submits that she is entitled to have the annuity to her, accounting from her husband's death, secured to her as a primary charge on the estate; she says she is advised that a sufficient amount of the productive estate should be set apart to raise her annuity, and submits to any order the Court may pass which will secure the prompt payment of her annuity.

The infant defendants answer ignorance, and submit their rights to the protection of the Court, but their parents, Robert L. Cutting and wife, and J. Townsend Burden and wife answer, and without admitting or denying the execution and publication of the alleged will and codicil, leave the complainants to the proof of the same. They admit that the papers professing to be will and codicil, make the several bequests mentioned in the bill, and created the charges or annuities mentioned in the bill; they admit the real and personal estates, other than such as are specifically devised to be of considerable value; and that a large portion of the real estate is unimproved; but

they deny it is not divisible, but expressly charge that it is divisible without loss or injury to any of the parties, and that such division is especially desirable; and that it is indispensable to the interests of Mrs. Cutting and Mrs. Burden. They deny that the complainant is authorized or empowered by the will to sell any of the estate, "to meet any exigency which he may conceive to exist;" and they deny that any "absolute necessity" does exist for such sale. They admit that they have not consented to the complainant's leasing, because they think it will delay and embarrass the division of the residue of the estate. They say that William A. Moale is not entitled to the assistance of the Court in respect to raising the annuities charged, or that he has any duty in respect to the same, except so far as his part of the estate is concerned, because the annuities are a general charge on the estate.

For the purposes of this decision, further allusion to the averments of the bill and answer, we think needless. The will and codicil have been regularly proved by all the witnesses to them respectively, and the certificate of such probate, in the usual form, is attached to the copy submitted in evidence, so that *prima facie* there should be no controversy over the validity of each. And although there is no direct issue made in the cause, the will and codicil simply not having been admitted in the answer as valid testamentary papers, and the complainants left to the regular proof of the same; and although it is not ordinarily the province of a chancery Court to revise the probate of wills, yet, lest doubts may arise respecting their validity, by reason of the language of the answers, and the objections suggested in argument, which doubts, we think, have no real foundation upon which to rest, we will briefly advert to the proofs about the same.

The witnesses to the will are Otto Sutro, P. L. Perkins, and Henry McCaffrey. Below their names appear the words, "witnessed and signed in the presence of each

other, Nov. 27, 1877." Immediately above their names and after the word "witness," certain words are designated as having been first interlined. The fact that the witnesses have signed above instead of below the words designating attestation, cannot affect the validity of the attestation, when it is so clearly manifest that they signed for the purpose of attestation. At the probate each witness to the will and codicil swore that he heard the testator pronounce and declare the same as his will, and they with the other witnesses, naming them, "subscribed their names as witnesses in his presence, at his request, and in the presence of each other." The witnesses have testified in this cause, and without analyzing and detailing their respective statements, it is enough to say, that although it appears the testator did not sign the will in the presence of all at once, and the witnesses did not, in fact, write their names, all at one and the same time, yet the testator acknowledged his signature and declared it his will to all at once, and those who had before written their names as witnesses, then and there re-affirmed the same. What we have said respecting the will is also true respecting the codicil. The witnesses to it are Otto Sutro, Louis Reuter, and R. McLayton. They have all testified in the cause, and substantially in the same way and to the same effect as the witnesses to the will proper. At the probate, also, they swore as did the others. We think the omission of further words of attestation after the word "witness" to the left of the testator's signature, is fully supplied in the probate, and do not think it is such an omission as should invalidate the attestation. We think both will and codicil effectively executed and attested in accordance with the requirements of law. *White vs. Trustees of British Museum,* 6 *Bingham,* 310; 1 *Jarman on Wills,* 213; *Welty, &c. vs. Welty, Ex'r, &c.,* 8 *Md.,* 15, and *Etchison, et al. vs. Etchison,* 53 *Md.,* 357.

By the decree appealed from, it was adjudged "that by the true construction of said last will and codicil, the clear

income of all the residuary real and personal estates, are to be applied by the said executor to the expenses of management of the same during the life-time of Mary W. Moale, the widow of said testator, and to the payment of taxes thereon, and to the discharge of the annuities of one thousand dollars and five thousand dollars per annum, by the said last will and codicil bequeathed and devised to the said executor and the said Mary W. Moale respectively, and charged by the testator, as in his last will mentioned, and thereafter, as to one-third part of the surplus, if any, to the uses of the said executor, in his own right; as to one-third other part thereof, to the use of the defendant, Judith C. Cutting, and as to the remaining one-third thereof to the use of the defendant, Evelyn B. Burden." It then directs the executor to execute the trust under the direction of the Court, and especially directs him concerning the same in accordance with the construction of the will as declared. It also directs that the thirty thousand dollars mentioned in the codicil as having been given the executor in his life-time, in the accounts thereafter to be taken of the estate, shall be deducted from his share thereof. As to the prayer of the bill for sale of a part, and partition of the residue of the unimproved portion of the estate, the bill is dismissed. Both complainants and defendants have appealed from this decree, so that the case comes before us on cross-appeals in one record.

The learned Judge who decided this case below, thought that by the true construction of the will, it was apparent that the testator intended to make his wife the principal object of immediate care, and to promote her comfort, intended his son, whom he left executor, to manage the estate in so far as it was residuary and undivided, during the life of Mrs. Moale. The more certainly to secure her comfort he intended that there should be no division of the estate during her life, but that the same should be kept together under the management of the son, who for

such duty and in lieu of commissions on the estate, was given a thousand dollars per annum during the life of his mother. The learned Court says: "I do not deem it necessary to determine, in the present aspect of the case, whether the executor takes an estate under the will, or is simply invested with a power to do that which he is plainly authorized by the terms of the will to do. His authority is to manage the estate, that is, to keep it together, to collect its revenues, to pay taxes, and necessary expenses, to discharge the annuities, payable respectively to his mother and himself, and to divide whatever may be left of the income among his two sisters and himself. He may also lease any portion of the real estate, with the consent of the testator's daughters, and where it is 'absolutely necessary,' sell the same and invest the proceeds of sale in certain indicated securities, upon the same limitations which are applicable to the property so sold. It is upon this contingent form of sale that the controversy in this case has mainly arisen. It seems that the executor has waived an offer for the purchase of a portion of the unproductive property forming a part of the residue of the estate, from parties who are unwilling to lease, and he has offered evidence tending to show that the price is a fair one, and that it will be advantageous to all parties interested in the distribution to have the sale made. The defendants object to the sale, upon the ground that the price is inadequate, and that it is for other reasons inexpedient to make the sale. The question then is, does this difference of judgment arising between the executor, who is also an owner of one-third of the property, and his sisters, who are his co-owners of the other two-thirds, present a case for the exercise of the power as one of absolute necessity? I am of opinion that it does not. The phrase 'absolutely necessary' means such a necessity as being not conformed to, will result in irremediable injury or loss to the estate. It does not mean that a difference of opinion between the executor

and his co-owners will entitle him to substitute his will for theirs, and justify the sale as one of absolute necessity. The testator made his daughters the judges of the expediency of leasing the estate, and forbids it in the face of their dissent.   Why should he confer upon the executor a still larger power, merely upon his opinion that a sale will be advantageous to all the parties in interest, when it is admitted that the present income of the estate is sufficient to meet all the demands upon it?  I am of opinion, that, under the state of facts shown in this case, no such contingency of absolute necessity has arisen which will justify the executor in making the sale he has proposed to make."

After a careful analysis and consideration of this will, we are convinced that the construction given the will, by the Court below is the only construction which it will bear, without doing violence to some one provision of it. It is possible that a sale of some portion of the unproductive estate would greatly swell the immediate revenues of the estate ; and the interests of all parties may possibly be promoted thereby; but in our opinion, unless *all* the parties in interest, could agree respecting it, the executor cannot sell in the present condition of the estate, when no "absolute necessity" demands it, and the Court ought not to order it.   The necessity contemplated is an imperative necessity; and being such must refer to some pressing exigency of the estate, growing out of deficiency of revenue to meet the demands upon it; such as might be brought about by some unexpected contingency or disaster.   Chief Justice MARSHALL, in *M'Culloch vs. The State of Maryland,* 4 *Wheaton,* 414, says "*necessary*" admits "of all degrees of comparison."  "A thing may be necessary, very necessary, *absolutely* or *indispensably* necessary."   In the case then under discussion, the word "absolutely" was prefixed to the word necessary, and he said it was impossible to escape the conviction that the prefixing the word "absolutely" was intended to materially affect the mean-

ing of the word necessary. For a like reason we cannot escape the conclusion, that the testator by so emphasizing the word necessary designed to indicate a superlative degree of necessity, which it is very certain has not been shown here. The bare advisability of such a sale, as a mode of swelling the revenues, already sufficient for demands, in the judgment of the executor or it may be of judicious financiers, would not meet the condition imposed by the testator, as we understand him. It may not be wise in the estimation of other business men, or of this Court, for the testator to have so ordered; but it was *his own judgment*, upon which he had hitherto acted in the management of his property, with a view, no doubt, to its increase in value, that he intended still to control its management for the period of his wife's life; and we must execute his will in the matter. What may be done if all the parties in interest, (including the widow,) were agreed, we are not now called on to consider. It is only the case made by the bill, and met with the opposition of the defendants, representing two-thirds of the residue of the estate, that we are to deal with; and upon that bill as framed we do not think the Circuit Court could have decreed otherwise. Taking this view we have made no allusion to the authorities cited in the very able discussion of the case by the counsel of the respective parties. What we have said applies equally to the appeal of Mrs. Cutting and Mrs. Burden; but in respect to that appeal two questions raised on it remain for consideration. It is by them contended that the thirty thousand dollars, "in Virginia bonds, and Peoples and Consumers' Gas stock," which by the codicil the testator says he had given to his son, and directed to be deducted from his share of the estate, should be treated as a debt due from William A. Moale, Jr., and should bear interest from the time it was received, and should be deducted with the interest added. We do not think this was the purpose of the testator, or that the

language of the codicil so imports. He had actually given him the bonds and gas stock to the amount mentioned, and put him in possession thereof, and it was only this designated amount of thirty thousand dollars, that he directs to be deducted. To that extent he intended it to be a payment in advance of so much of his share of the estate ; and it is to be treated in the same way as advancements technically so are treated, and which are not charged with interest. In the case of *Manning vs. Thruston*, decided at an earlier period of this Term, (*supra* 218,) the same question was presented, and it was ruled that interest in such case was not chargeable.

Whit respect to the contention, that the annuities charged are not charged on the corpus of the estate, but are a continuing charge upon the rents and profits, it is proper that we say a word. The language of the · will in both cases is very express. It is "I charge my estate with an annuity, &c." In the clause relating to the wife, it is followed by the language "to be paid to my beloved wife out of the income of the estate ; " but in the clause relating to the son, that language is not used after declaring the charge. Can it be doubted, in the face of such direct expression of intent to "charge his estate," that if, by any fortuity, the revenues of the estate, after paying taxes and other necessary expenses, fell short of paying the annuities, the corpus of the estate would be bound for the deficiency? We think there is no room for doubt, that such a contingency happening would present *such a case of necessity* as would meet the intention of the testator in respect to the power of sale given the son ; and that in such emergency he might exercise such power. Should such emergency arise, having brought the trust into Court to be administered under its direction, he should act under the direction of the Court, whether to sell enough to make an additional annual income to meet the deficit, or only so much as will meet the immediate demand ; which, of

course, would depend on the causes for the deficiency, and the likelihood of its recurrence and continuance.

The decree in respect to both appeals will be affirmed.

*Decrees affirmed.*

(Decided 8th March, 1883.)


Judge MILLER dissented on the appeal of Mrs. Cutting and Mrs. Burden.