(Decided March 26th, 1895.)

---

WILLIAM A. FISHER ET AL., EXECUTORS, &c., *vs.* JAMES BOYCE, JR., AND OTHERS.

*Caveat as to part of a Will—Estoppel to deny Validity of Will—Issues from Orphans' Court.*

The Orphans' Court cannot send issues to be tried at law to determine whether a part only of a will was obtained by fraud or undue influence, when such part is not distinct and severable, and cannot be taken from the will without subverting its general scheme and purpose.

After a will had been admitted to probate, a bill in equity was filed by the executors against all parties interested for the construction of the same and the administration of the estate. The petitioners in this case were parties to the suit, and answered admitting the due execution, &c., of the will and codicil, and subsequently asked for an allowance from the income. Two years afterwards the petitioners alleged in the Orphans' Court that that part of the residuary clause,

by which the testator directed that the sums charged against his children on his books should be treated as parts of their shares, and the codicil republishing the will, had been obtained by fraud and undue influence practised upon the testator, and asked that issues might be sent to a Court of Law to determine this question. *Held*, that the petitioners, under these circumstances, were estopped to deny the validity of the will, there being no allegation that since the probate thereof they had acquired knowledge of facts previously unknown to them respecting the issue.

Appeal from an order of the Orphans' Court of Baltimore County, directing the following issues to be sent to a Court of law for trial:

1. Was the provision contained in the paper-writing purporting to be the last will and testament of James Boyce, and therein set forth in the following words, that is to say: "And all the sums which have been charged by me, or by my authority, on any of my books of account or memoranda, against any of my children, or which may appear on memoranda made by me, and not yet entered into my books of account, shall be treated as parts of my estate, and the charges against each child shall be divided and treated as parts of the share of my estate set apart to such child, or to trustees for her and her issue," procured to be executed by undue influence practised upon him and operating upon and constraining the will of the said James Boyce, when he was, from feebleness of mind and body, unable to resist said undue influence?

2. Was the provision contained in the paper-writing purporting to be a codicil to the last will and testament of the said James Boyce, in the language following, that is to say: "And I confirm my said last will and testament in other respects," procured to be executed by the said James Boyce as part of said alleged codicil by undue influence practised upon him and operating upon and constraining the will of the said James Boyce, when he was, from feebleness of mind and body, unable to resist said undue influence?

The third and fourth isues repeated the above, propounding the question of fraud *vel non* instead of undue influence. The case is further stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., McSHERRY, FOWLER, BRISCOE and ROBERTS, JJ.

*John P. Poe, Attorney-General,* and *Edgar H. Gans,* for the appellants, cited *Williamson* v. *Montgomery,* 40 Md. 373 ; *Jones* v. *Earle,* 1 Gill 400 ; 1 *Williams on Exors.,* 211 ; *Rhodes* v. *Rhodes,* L. R., 7 App. Cas. 198 ; *Edes* v. *Garey,* 46 Md. 41 ; *Barbour* v. *Mitchell,* 40 Md. 161 ; *Reilly* v. *Dougherty,* 60 Md. 278 ; *Bigelow on Estoppel,* 673.

*Charles Marshall* and *George Blakistone,* for the appellees, cited *O'Neill* v. *Tarr,* 1 Rich. 80, 89 ; 1 *Redfield on Wills,* 374 ; *Price* v. *Taylor,* 21 Md. 356 ; *Cain* v. *Warford,* 3 Md. 462 ; *Griffith* v. *Diffenderffer,* 50 Md. 489 ; *McIntire* v. *Worthington,* 68 Md. 207 ; *Mills* v. *Hume,* 22 Md. 346 ; *Barroll* v. *Reading,* 5 H. & J. 175.

ROBERTS, J., delivered the opinion of the Court.

This appeal is taken from an order of the Orphans' Court of Baltimore County, transmitting issues to a Court of Law caveating the will of James Boyce, late of said county.

Two questions are presented by this appeal :

*First.*—Had the Orphans' Court, under the circumstances of this case, any authority to order the transmission of the *particular* issues prayed for ? and

*Second.*—Were not the appellees, by their antecedent conduct, estopped from contesting the validity of the will in controversy ?

It is not contended by the appellants that the Orphans' Court had no authority to send to a Court of Law for trial, issues which contest the validity, either of the will and codicil in their entirety, or *separate and distinct* provisions thereof. But it *is* contended that there is no authority in law justifying the Orphans' Court in transmitting to a Court of Law an issue or issues which assail as fraudulent and void *certain parts* of a will and codicil, which are not in themselves *distinct and severable* from the other parts.

The particulars of this controversy are, that James Boyce,

late of Baltimore County, deceased, departed this life, leaving a last will and testament in writing, dated the 9th of July, 1891, and also a codicil thereto, dated the 27th of July, 1891, both of which were, on the 6th of September, 1891, duly admitted to probate in the Orphans' Court of Baltimore County, and letters testamentary thereon granted to the appellants, who duly qualified as executors. On the 8th of January, 1892, the appellants filed in the Circuit Court of Baltimore City their bill of complaint against all the parties interested in the settlement of said estate under the provisions of said will and codicil, asking said Court to construe the meaning and effect of all the provisions of said will and codicil, and assume the administration and settlement of said entire estate, both real and personal. The bill was answered, and among others, by James Boyce, a son, and Catharine Harrison, a daughter of the testator, who are the appellees in this record. In their respective answers the appellees severally and unqualifiedly admit the due *execution, publication and probate* of said will and codicil. On the 26th of March, 1892, the Court, by its decree, assumed jurisdiction of the trust and took charge of the administration and settlement of the same.

On the 31st of March, 1892, the said Catharine Harrison, by her husband as next friend, filed her petition in the same cause, claiming that she was entitled under said will to the income on the one-sixth of the *residue* of said estate after paying certain legacies in said will provided, and praying a monthly allowance under the provisions of said will for maintenance pending the settlement of said estate. In the answer to said petition it was claimed that the petitioner had received a large sum of money from her father during his lifetime, amounting to not less than thirty-eight thousand dollars; that the debts, incumbrances and legacies would consume the greater part of the estate, and that her income, if any, from said residue, was then incapable of ascertainment. The petition and answer were heard on the proofs offered, and the petition dismissed. On March 12th,

1894, the appellees filed their petition in the Orphans' Court of Baltimore County, in which they alleged that "the paper-writing dated the 9th of July, 1891, is in some particulars the *true* last will and testament of the said James Boyce; and the paper-writing dated the 27th of July, 1891, is in some respects a *true* codicil to said will," but that certain provisions of both said will and of said codicil were procured to be executed by said testator by undue influence and fraud. To a proper understanding of this controversy it will be necessary to quote here in its entirety the residuary clause of said testator's will, which mainly constitutes the contention in this case, and is as follows:

" It is my will that all the rest, residue and remainder of my estate, real and personal, situate in the State of Maryland and in other States, shall be divided by my executors into six parts (*and all the sums which have been charged by me, or by my authority, on any of my books of account or memoranda, against any of my children, or which may appear on memoranda made by me, and not yet entered into my books of account, shall be treated as parts of my estate, and the charges against each child shall be divided and treated as parts of the share of my estate set apart to such child, or to trustees, to her and her issue*), it being my purpose, as far as practicable, thereby to promote equality in the benefits which my children have derived and shall derive from my estate."

That which is included within brackets and italicized is the part of said clause which it is claimed by the appellees is fraudulent and void, as having been procured by the practice of undue influence upon the testator in the execution of the same.

It is also contended that the last line of the codicil, which reads, " and I confirm my last will and testament in other respects," was procured to be executed by the testator by the practice upon him of fraud.

We come now to the consideration of the first question arising on this appeal.

Until the decision in the case of *Griffith* v. *Diffenderfer and wife*, 50 Md. 466, the practice had never been sanctioned in this State of allowing issues transmitted to a Court of Law to be so framed as to contest the validity of *certain parts* of a will without assailing *the entire will*. However, before the decision in this State, the same practice had long prevailed in the English Courts, notably in *Rhodes* v. *Rhodes*, L. R. 7 App. Cases, 198; *In goods of Duane*, 2 Sw. & T. 590; 1 *Jarman on Wills*, 413. Whilst the practice has been thus sanctioned, the doctrine of the cases is such that we are constrained to think it should be kept within well-defined restrictions. It doubtless may be in some instances the means by which good results may be accomplished in the detection of fraudulent impositions; but, yet, if not properly guarded, it is quite well calculated to destroy the harmony of a testator's dispositions and cause his will to directly misinterpret his just intentions.

The question to be considered and disposed of on this appeal has not received the approval of any of the English or American Courts, so far as we are informed, nor do we think it ought to receive the approval of this Court. From the facts already stated, it is apparent that the caveat filed in the Orphans' Court of Baltimore County does not seek to strike down the entire will of the testator, but is an effort to carve out of the residuary clause of the will only such parts thereof as conflict with the interests of the appellees. It is clearly manifest that the testator, by the use of the language against which the caveat is filed, sought to promote equality in the final disposition of his estate. This language does not present a proposition *distinct and severable*, but it is so interwoven with the general scope and purpose of the leading provisions of the will, that to eviscerate from the residuary clause the suggestive language contained therein, would be subversive of the objects which the testator has sought to make effective. On this point the observations of Sir James Hannen, in *Harter* v. *Harter*, L. R. 3 P. & D. 21, may be referred to : " Such a mode of deal-

ing with wills would lead to the most dangerous conse-
quences, for it would convert the Court of Probate into a
Court of Construction of a very peculiar kind, whose duty it
would be to shape the will into conformity with the supposed
intentions of the testator. In very many of the cases which
come before the Courts of Law and Equity, as to the proper
construction of wills, the intention of the deceased is sup-
posed to be seen, but the question is whether the language
used expresses the intention. If the process now sought to
be applied to this will were to be adopted, the Court of
Probate will in future be asked first to ascertain by extrinsic
evidence what the testator's intention was, and then to ex-
punge such words or phrases as, being removed, will leave
a residuum, carrying out the intention of the testator in the
particular case, though different in form, and possibly in
legal effect, from that which the testator or his advisers
intended."

The caveat to the codicil would seem to follow as the
natural concomitant of the assault on the objectionable
features of the residuary clause, as the language of the
codicil is in direct terms a republication of the will. In what
we have said, we have dealt sufficiently with the subject as
not to require further comment.

With respect to the question of estoppel, which is the
second question raised by the appeal, we think, in the pres-
ent state of the record, the appellees have by their conduct
denied themselves the right to institute these proceedings.
"A party cannot, either in the course of litigation or in
dealings *in pais*, occupy inconsistent positions; and where
one has an election between several inconsistent courses of
action, he will be confined to that which he first adopts.
Any decisive act of the party done with knowledge of his
rights and of the facts, determines his election and works
an estoppel." * * * "It is an old rule of equity, that
one who has taken a beneficial interest under a will, is
thereby held to have confirmed and ratified every other
part of the will, and he will not be permitted to set up any

right or claim of his own, however legal and well-founded it may otherwise have been, which would defeat or in any way prevent the full operation of the will." *Bigelow on Estoppel*, 562. If, however, a party has acted in ignorance of the *true* state of facts, he will not, on discovering the truth, be bound by his previous conduct, based upon a state of case essentially different from that which had controlled or influenced his prior action. In the case under consideration, the record does not show that the appellees, since the will and codicil were admitted to probate, have obtained knowledge of facts previously unknown to them; in fact, have since the institution of those proceedings ascertained that the testator was, by fraud or undue influence, induced to execute said papers as testamentary dispositions of his property. It is a maxim in a Court of Equity not to permit the same person to hold under and against a will. *Herbert* v. *Wren*, 7 Cranch. 378. We think this rule should not in its application be limited to Courts of Equity, as it is equally appropriate to the jurisdiction and practice of Courts of Law. If the appellees claim under the will of their father, they must give it effect as far as they can, and they will then be estopped from denying its validity and genuineness. *Waters' Appeal*, 35 Pa. St. 523; *Thrower* v. *Wood*, 53 Ga. 458. This rule does not, of course, apply in cases, as hereinbefore explained, where the party objecting to the will has previously assented thereto without knowledge of the circumstances attending the execution of the will. It follows from these views that the order of the Orphans' Court of Baltimore County must be reversed and the petition of the appellees be dismissed.  . .

> *Order reversed and petition dismissed with costs.*

(Decided March 26th, 1895.)