# KATHRYN M. GAGE, Executrix, *v.* KATIE HOOPER ET AL.

[No. 64, October Term, 1933.]

*Decided January 11th, 1934.*

The cause was argued before Bond, C. J., Urner, Digges, Parke, and Sloan, JJ.

*J. A. Dushane Penniman,* for the appellant.

*Alfred Bagby, Jr.,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

The record in this case discloses that Isabelle Frey, late of Baltimore City, deceased, during her lifetime executed three wills disposing of her property. The first was dated October 25th, 1929; the second on October 22nd, 1932; and the third on October 24th, 1932. The will dated October 22nd, 1932, was, on December 1st, 1932, admitted to probate by the Orphans' Court of Baltimore City, and Kathryn M. Gage, the person appointed as executrix under the provisions of that will, qualified as such by having letters testamentary issued to her by said court. By petition of the appellees, filed February 11th, 1933, the orphans' court was asked to revoke the probate of the will dated October 22nd, 1932, as also the letters testamentary granted thereon, and to admit to probate the will dated October 24th, 1932. After an answer and replication were filed, making up the issues to be determined, and after the taking of testimony in open court, the Orphans' Court of Baltimore City, by its order filed May 29th, 1933, declared: "That the order of probate of the supposed last will of said Isabelle Frey, dated October 22, 1932, and admitted to probate in common form by this court on December 1st, 1932, be, and the same is hereby, revoked, and that likewise the letters testamentary granted Kathryn M. Gage on said will be, and the same are hereby, revoked; and it is further ordered that the said Kathryn M. Gage forthwith return to this Court an administration account on said estate and it is further ordered that the court costs of this proceeding be paid out of the estate of the said Isabelle Frey; and it is further ordered that the will of the said Isabelle Frey dated October 24th, 1932, and heretofore filed in this court, be, and the same is hereby admitted to probate as the true and genuine will of the deceased." The appeal is from that order.

The facts as contained in the record show that the testatrix

was during her lifetime a resident of Baltimore City, and died on November 27th, 1932. At the time of her death she was a widow, without child or children, and her nearest heirs at law and next of kin were cousins. She was possessed of considerable property located in Baltimore City, the rents from which had been collected, for six months prior to her death, by the appellant on a five per cent. commission basis. The deceased was, on or about October 19th, 1932, admitted to the Bon Secours Hospital, Baltimore City, having been taken to that hospital by the appellant. On October 22nd, 1932, she executed the will, the probate of which was revoked by the order referred to. This will was very brief, and by its terms devised and bequeathed all of the testatrix' property, of every kind and wheresoever located, to Kathryn M. Gage, and appointed her executrix thereof. The O'Brien family had been friends of the testatrix and the members of her family for many years. Catherine T. O'Brien resided, at the time of the making and execution of the wills of October 22nd and 24th, 1932, in Washington, D. C. There was no relationship between the O'Brien family or Kathryn M. Gage and the testatrix. Catherine O'Brien had no knowledge of the testatrix being in the hospital until on the evening of Friday, October 21st, when she was telephoned to in Washington City by Kathryn M. Gage and told by the latter that she was calling her at the request of Mrs. Frey, who wished to see her. Previous to this conversation, there was no acquaintanceship between Kathryn M. Gage and Mrs. O'Brien. During the telephone conversation, Mrs. O'Brien told Miss Gage to inform Mrs. Frey that she would come to see her the following day, Saturday. Mrs. Frey at that time contemplated having an operation performed at the hospital, which was performed during the forenoon of October 24th.

There is no question raised as to undue influence or mental incapacity in the execution of either of the wills of controversy. The single question is whether or not the will under the later date, October 24th, was so signed and executed by the testatrix as to constitute it her last will and testament, thereby revoking the will of October 22nd, theretofore made

530

by her. The will under the latter date contained a clause specifically revoking and annulling all former wills made, as well as containing provisions repugnant to, and in conflict with, the former will of October 22nd. The first will, that dated October 25th, 1929, was made during the lifetime of the testatrix' only child, a son, who died subsequent to that date and prior to the making of the wills of October 22nd and 24th, 1932. This first will was introduced in evidence; and by an examination thereof and comparison with the will of October 24th, 1932, it is found that the disposition of the testatrix' property is substantially the same in those two wills; the material differences being that, the son having died, a trust for his benefit created by the first will was omitted in the last, and that the last will contained a bequest to Kathryn M. Gage of $300 for services rendered. The residue, under the terms of the first will, after the termination of the trust for the benefit of the testatrix' son, was to be distributed to certain persons who were her cousins, and under the residuary clause of the last will these parties would take as heirs and next of kin. This fact strongly indicates a settled purpose on the part of the testatrix as to the disposition of her property; and the execution of the last will, under the provisions of which the disposition of the property was totally different from that expressed in the second, indicates strongly an intention to materially and substantially reinstate the provisions of the first will.

The evidence in the case as to the circumstances surrounding the preparation and execution of the last will, as might be expected, is conflicting; but there are certain pregnant facts about which there is no dispute: First, that Mrs. O'Brien never injected herself into the matter, but came to see the testatrix in response to a special request being delivered to Mrs. O'Brien by Miss Gage, and that she had no knowledge of Mrs. Frey's illness and expected operation until so advised. Making every allowance that can be fairly done, due to the fact that Mrs. O'Brien is a beneficiary under the last will, we cannot disregard or fail to give effect to her testimony and that of her son, John R. O'Brien, as to the

circumstances surrounding the execution of the will of October 24th. This testimony, of course, is not corroborated by disinterested witnesses, but certain bits thereof are either corroborated or undenied by persons in a position to know if they were false. Mrs. O'Brien testified that she visited the hospital on Saturday the 22nd, at which time she was told by the testatrix that she had made a will but was not satisfied with it, and asked the witness to see and read the will; that the witness went to the home of Miss Gage in an effort to ascertain the contents of the will, but was unable to do so, Miss Gage not being at home; that Mrs. O'Brien returned to the hospital on Sunday evening or night, and when she entered Mrs. Frey's room, Mrs. Frey said to the nurse in attendance that "this is the woman I want to see"; that the testatrix told Mrs. O'Brien that, she not being able to ascertain the contents of the will of October 22nd, she desired to make another will; that Mrs. O'Brien secured writing materials, furnished to her by the nurse, upon which she made notes of Mrs. Frey's wishes as to the disposition of her property, and returned to Washington that night to have the will prepared in accordance with the notes so taken. Mrs. O'Brien knew that the operation was to be performed on Monday, the 24th, and, if the will was to be executed as desired by Mrs. Frey before the operation, she would have to return to the hospital with the prepared will early on the morning of the 24th. This she did, accompanied by her son, John R. O'Brien, arriving at the hospital about 7.30, and, entering the room of Mrs. Frey approximately ten minutes after 8, found Mrs. Frey sitting in bed, read the will as prepared to her, after which the testatrix requested John R. O'Brien to write her name, she making her mark and asking Mrs. O'Brien and her son to sign as witnesses to the will. This occupied only a few minutes, just long enough to read the will and have it executed, as stated. The only contradiction of this is the statement of Miss Grimm, a nurse, in respect to the length of time that Mrs. O'Brien or her son were in the room with the testatrix, it being argued by the appellant from this testimony that there was not time within which

the contents of the will could have been made known to the testatrix and the will be executed. It is uncontradicted that the details of the testamentary dispositions contained in the will had been furnished to Mrs. O'Brien by the testatrix on Sunday night. The will itself is short, and in no way complicated, and would require only a very short time to read. We are of opinion that the weight of the direct testimony, as well as the circumstantial evidence, supports the conclusion reached by the orphans' court.

In the residuary clause of the will of October 24th it is stated: "All the rest and residue of my estate, both real, personal and mixed, I give devise, and bequeath to my cousin, John O'Brien, if alive (that once lived on Fayette Street near Fremont), or my next of kin and to them and their heirs and assigns forever, share and share alike, as tenants in common." The word "O'Brien" in this clause is stricken out and the word "McGuire" substituted; and it is contended that this substitution vitiates the will; it having been made after the testatrix signed the will. The uncontradicted testimony to respect to this is that Mrs. O'Brien left the hospital Sunday night, returned to her home in Washington, and had her son Lawrence O'Brien put in the legal form of a will the provisions and bequests contained in the notes which she had taken as dictated to her by the testatrix; that, in writing the names, her son Lawrence O'Brien, inadvertently and through mistake, wrote "John O'Brien" in the residuary clause, instead of "John McGuire," the person intended; that, when the will was read to the testatrix on the following morning, October 24th, at the time it was executed, the testatrix called attention to that error, and said it should be corrected. There can be no possible doubt that the party intended was John McGuire, because he was a cousin of the testatrix and had lived at one time as indicated in the residuary clause, while John O'Brien was not a relative of the testatrix and never had lived in Baltimore. Then again, it is not disputed that John McGuire was dead at the time of the execution of the will, and in such event the will provided that the residue of the estate should vest in the heirs and next of kin of the

testatrix. It is therefore evident that John McGuire was the party intended, and that, even though the name, through mistake, was wrongly written, the description contained in the will of the party intended leaves no doubt on this point. *Fisher v. Boyce,* 81 Md. 51, 31 A. 707; *Home of the Aged v. Bantz,* 107 Md. 549, 69 A. 376; *Miller's Construction of Wills,* pp. 147, 148, 152.

The name used in the attestation clause, taken as written, indicates that it was an attestation to a will made by Katie O'Brien, it declaring: "Signed, sealed, published, and declared, by Katie O'Brien of Wash., D. C., the above named testatrix, as and for her last will and testament, in our presence, and at her request, and in her presence, and in the presence of each other, we have hereunto subscribed our names as attesting witnesses." This was abundantly shown by the evidence to have been a mere error, inconsequential, and in no way invalidating the will. The attestation clause is not an essential part of the will. *Schouler's Wills and Administration,* p. 168, sec. 346; *Bagby, Excrs. & Admrs.,* p. 16; *Woodstock College v. Hankey,* 129 Md. 675, at pages 680, 681, 99 A. 962; *Moale v. Cutting,* 59 Md. 510. If there is an attesting clause, a mistake in it may be corrected by parol. *Woerner's Law of Administration,* pp. 99, 100, 733.

The similarity of provisions between the will of October 24th, 1932, and that of 1929, the repugnancy in the provisions in these two wills with the one of October 22nd, 1932, the entire testimony contained in the record, and the circumstances corroborating the testimony on behalf of the appellees, convinces this court, as it did the orphans' court, that the paper writing dated October 24th, 1932, is the genuine and true last will and testament of Isabelle Frey, deceased. The order of the orphans' court so holding, revoking the probate of the supposed will dated October 22nd, 1932, and admitting to probate the will of October 24th, 1932, will be affirmed.

*Order affirmed, with costs in this court to the appellees.*