## V. MILTON REICHARD AND EDWIN J. FARBER, Executors, *vs.* NANCY E. IZER et al.

*Wills— When Parties May be Estopped by Conduct From Filing Caveat— Preliminary Question as to Right of Party to File Caveat to be First Tried—Dismissal by Infant of Caveat Filed by Next Friend.*

After the probate of a will and the grant of letters testamentary, two of the seven children of the testatrix filed a caveat alleging that the execution of the will had been procured by undue influence, fraud, etc. All of the other children filed a petition in the Orphans' Court asserting that the allegations of the caveat were untrue and unfounded and protesting against it. The executors afterwards stated a first account which all of the children of the decedent asked the Court to ratify and the said caveat was dismissed. Snbsequently certain of the children who had protested as above set forth against the caveat, filed another caveat to the will alleging fraud, undue influence, etc. The executors contended that these caveators were estopped from maintaining the caveat because they had asserted in the petition and in a written agreement that the similar allegations contained in the first caveat were untrue. The caveators alleged that since signing those papers they had ascertained facts relating to the fraud charged of which they were not then aware. The executors asked for issues to be tried at law as to whether the caveators had signed the petition with full knowledge of the facts attending the execution of the will, and denied the right of the caveators to proceed under the caveat until the preliminary question was settled. Upon an appeal from an order of the Orphans' Court directing the issues relating to the validity of the will, as proposed by the caveators to be tried. *Held,* That it was error to order the issues under the caveat to be tried without first determining whether the caveators were precluded by their conduct from contesting the validity of the will, and that if at the time they asserted that the charges of fraud in the first caveat were false they had full knowledge of the facts referred to, they should not now be allowed to contradict what they then put on record without giving some satisfactory reason for doing so, such as that the petition was signed in consequence of fraud perpetrated upon them, and if such an issue of fact be raised it must be determined before a trial of the caveat.

One of the sons of the testatrix was under twenty-one years of age. He signed a paper appointing a next friend, who filed a caveat to the will. Afterwards this son filed a petition in the Orphans' Court dismissing the caveat and revoking the authority of the next friend, but the latter insisted upon his right to continue the proceedings. *Held,* that it was the duty of the Orphans' Court to ascertain if the next friend was acting

in the interest of the infant or in that of other parties, and unless they find that it is for the interest of the infant that proceedings under the caveat be continued, it should be dismissed.

The costs in the above-mentioned proceedings should be paid by the parties mainly responsible for them.

Appeal from the Orphans' Court of Washington County. The Exhibit B referred to in the opinion of the Court is as follows: The petition of Sarah C. Hemphill and John W. Hemphill,· her husband, Nancy E. Izer and Charles B. Izer, her husband, Arthur P. Gorman Shipley, Lewis G. Stanhope Shipley and Lester Shipley, respectfully represents to your Honors:

1st. That said Sarah C. Hemphill, Nancy E. Izer, Arthur P. Gorman Shipley, Lewis G. Stanhope Shipley and Lester Shipley are children of said Margaret Shipley, deceased, and devisees and legatees under her last will and testament heretofore on the 4th day of December, 1900, duly admitted to probate in the Orphans' Court of Washington County.

2nd. That on the 29th day of January, 1901, a caveat was filed in your Honorable Court by Wynkoop Shipley and Emma F. Davis, wife of Cyrus M. Davis, against the said last will and testament of the said Margaret Shipley upon various grounds therein alleged.

3rd. That your petitioners with the said Wynkoop Shipley and Emma F. Davis are all of the children of the said Margaret Shipley, deceased, and entitled under said last will and testament to all of the estate of the said Margaret Shipley except certain small specific legacies therein provided.

4th. That your petitioners are advised and believe that all the allegations made against the validity of the said last will and testament and codicil thereto are untrue and unfounded—fact, and that the allegations therein made of undue influence, fraud and misrepresentation, and alleged to have been exercised by V. Milton Reichard and Edwin J. Farber, executors, named in said will, are false and without any foundation in fact, and your petitioners on the contrary further show and allege from their knowledge of the circumstances and sur-

roundings of their deceased mother, and from their intimate knowledge and acquaintance with the said Reichard and Farber, that all of said allegations in said caveat so far as they reflect upon the character and conduct of the said Reichard and Farber are unjust, untrue and unfounded in fact.

5th. That your petitioners believe that said caveat will greatly interfere with and impede the prompt settlement of said estate, and hereby protest against the caveat and pray your Honorable Court that your petitioners may be made parties caveatees to said proceedings, and that the administration of the estate of Margaret Shipley, may be continued in the hands of the said executors without further interference. And as, &c., Nancy E. Izer, Charles B. Izer, Arthur P. Gorman Shipley, Sarah C. Hemphill, John W. Hemphill, Lester Shipley, Lewis G. Stanhope Shipley.

Exhibit No. 3 was as follows : The undersigned, Emma F. Davis and Cyrus M. Davis, her husband, caveators, who have heretofore filed a petition or caveat against the will of Margaret Shipley, late of Washington County, deceased, have discovered that they have been misinformed as to certain facts concerning which they made allegations in said caveat ; now therefore desire to retract any charges made in said petition and caveat against Dr. V. Milton Reichard and Edwin J. Farber, the executors of the will and codicil of said Margaret Shipley, deceased, and hereby withdraw any allegations therein contained that said Margarett Shipley was induced to execute said will and codicil through undue influence, misrepresentation and fraud, perpetrated, exercised or practiced by said executors or either of them upon the said Margaret Shipley. And they, the said Emma F. Davis and Cyrus M. Davis, do hereby admit that said will and codicil of said Margaret Shipley, deceased, constituted her genuine last will and testament and they accordingly hereby withdraw and dismiss, and pray this Honorable Court to withdraw and dismiss said petition and caveat so filed by them, the said Emma F. Davis and Cyrus M. Davis.    Signed, Emma F. Davis, Cyrus M. Davis.

·The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*J. Clarence Lane* and *Edgar H. Gans*, for the appellants.

The caveatees contend that they are entitled to have the preliminary question as to the right of the caveators to file a caveat first disposed of. *Reilly* v. *Dougherty*, 60 Md. 276. In the case at bar the Orphans' Court did not pass upon the question raised by the caveatees, but simply ignored it and summarily granted issues, each and all exactly as asked for by the caveators as to the validity of the will. The Orphans' Court under the decision referred to had the power to pass upon the preliminary question without issues, but when the question was raised it was clearly the duty of the Orphans' Court to pass upon the question and not pass over it. That Court could not arrogate to itself the final determination of such a question. The law does not award to the Orphans' Court such unlimited extension of its general limited jurisdiction as to make it the final tribunal for the determination of the question as to the right of the caveators to proceed with their caveat. Much less is it the right of the caveators themselves to determine, as is here attempted, that there is no preliminary question involved. It was the duty of the Orphans' Court to decide whether there were matters of fact in issue between the parties. *Smith* v. *Young*, 5 Gill, 197.

If they had found that there were such issues of fact it was their duty under the law to send them, upon the application of the parties, to the Circuit Court for trial. *Pegg* v. *Warford*, 4 Md. 393; *Munikhuysen* v. *Magraw*, 57 Md. 190. If the Court had found there were not such issues or had found that nothing but a purely legal question was to be determined, it was not incumbent on the Court to grant issues. *Cain* v. *Warford*, 3 Md. 462. In either case, however, it was certainly obligatory upon the Court to decide the question raised by the caveatees, whether there were such issues of fact or not. This the Court declined and failed to do.

It is by the caveatees asserted and by the caveators ad-

mitted, that the papers "A," "B" and "C" were signed by the caveators. They now undertake to repudiate their former solemn acts by some vague statement that the paper "A" was drawn and held by Mr. Farber, who drew the will; that they did not know that the testatrix was induced by fraud to sign said will; and that the executors were not parties to the agreement.

They also seek to evade paper "B" by alleging ignorance of the facts and set up the same story as to the paper "C" signed by them September 27th, 1901, after the Davis caveat had been dismissed and the executors had stated their first account. At a trial of the preliminary issues the caveatees would show most clearly the falsity of the pretence of ignorance by the caveators as to any facts pertaining to the execution of the will, and the falsity of the charge of any fraud practiced upon them.

In answer to the other ground of avoidance as to paper "A" that the executors were not parties to the agreement and could not therefore claim the benefit of any of its provisions by way of estoppel, these appellants submit that as executors and caveatees they stand for and represent those entitled under the will and it is their right and duty to protect the interests of those whose rights are infringed by the violation of the agreement entered into for the benefit of all the children of the testatrix. 1 *Woerner on Administration*, p. 9, sec. 10; *Turner* v. *Bouchell's Exrs.*, 3 H. & J. 99; *Little Sisters* v. *Cushing*, 62 Md. 416.

Do the matters alleged by the caveatees covered by the "Exhibits A, B and C" and denied in part by the caveators constitute such questions of fact as entitle the caveators to have them submitted to a jury as preliminary questions of fact? The caveators virtually admit that they do by pleading in confession and avoidance. They confess the signing but say they ought to be excused from the consequences thereof because they were in ignorance of certain facts which have since come to their knowledge, and because the papers or some of them were obtained by fraud. Here are two direct and material

issues of fact, ignorance and fraud. If these issues of fact should be found for the caveatees would the caveators be entitled to maintain their caveat in the face of the papers signed by them knowingly and voluntarily?

Such facts constitute an equitable estoppel *in pais* and also a technical estoppel. *Alexander* v. *Walter*, 8 Gill, 239.

These caveators, in the case of the former caveat of Davis and wife, involving the very same questions and making specifically the very same charges now made by them, by their voluntary act with full knowledge of the matters in dispute placed on record in the Orphans' Court a most positive and explicit denial of the very things now alleged by them as the foundation for their present proceedings. The parties intended to be affected and influenced by this conduct of the caveators have acted upon it. The executors proceeded to state their account and on the faith of the assent of all parties interested proceeded to pay out the funds distributed by them, and otherwise assumed liabilities and responsibilities on the faith of the acts of the caveators. The other children acted upon the conduct of the caveators in consenting to the account as stated and asking for its ratification. It is not necessary that the conduct of the caveators in signing the papers and inducing others to act upon them should have been actuated by fraud, and it makes no difference whether they were at the time mistaken or not. 2 *Pom. Eq. Jur.* sec. 803.

Courts will not allow parties to assume contradictory positions in the same controversy. "A party will not be allowed to come into Court and recklessly contradict what she alleged in the one and swore to in the other." *Scanlon* v. *Walshe*, 81 Md. 132; *P. W. & B. R.* v. *Howard*, 13 Howard, 305; *Scaggs* v. *B. & W. R. Co.*, 10 Md. 268; *Crichton* v. *Smith*, 34 Md. 42. "A party cannot either in the course of litigation or in dealings *in pais* occupy inconsistent positions, and where one has an election between several inconsistent courses of action, he will be confined to that which he first adopts." *Bigelow on Estoppel*, 562; *Fisher* v. *Boyce*, 81 Md. 52. Where a party has a right either to rescind a contract or to continue it in

force, his election when once made is final, and he cannot afterwards alter his determination. *Cole* v. *Hines*, 81 Md. 476; *Mark* v. *Hyatt*, 135 N. Y. 306; 18 L. R. A. 275. A party to a suit cannot with reference to the same subject-matter at the same time "approbate and reprobate." *Baker* v. *Safe D. & T. Co.*, 93 Md. 368.

*Thompson A. Brown* and *Charles D. Wagaman*, (with whom was *John E. Wagaman* on the brief), for the appellees.

An estoppel by deed binds only the grantor and his privies; 11 *Am. & Eng. Ency. of Law*, 394; *Maurice* v. *Wheat*, 8 App. Cas. D. C., 387; *Alexander* v. *Walter*, 8 Gill, 239. The executors are neither parties nor privies to the agreement marked "Exhibit A" in this cause. By virtue of that alleged agreement, they have not succeeded to any rights or obligations previously held by the parties who signed it.

The executors being only strangers to this agreement, the caveators are not estopped by it, nor can the executors take advantage of it by way of estoppel. *Alexander* v. *Walter*, 8 Gill, 185; *Nutwell* v. *Tongue*, 22 Md. 444; *Groshen* v. *Thomas*, 20 Md. 234; *Franklin* v. *Dorland*, 87 Am. Dec. 111; *Kitzmiller* v. *Van Rennsalear*, 10 Ohio St. 63; *Sunderland* v. *Struthers*, 47 Pa. St. 411; *Purdy* v. *Coar*, 109 N. Y. 448; 11 *Am. & Eng. Ency. of Law*, 400. Again, estoppels must be mutual and reciprocal and if the infants Lewis G. Stanhope Shipley and Lester Shipley, who have signed it, are not estopped by it, so the caveators who have signed it will not be estopped by it. *Furgeson* v. *Jones*, 3 L. R. A. 624; *Mennelly* v. *Southern Iron Co.*, 28 L. R. A. 428; *Alexander* v. *Walter*, 8 Gill, 239.

If we examine the pleadings we shall utterly fail to find sufficient allegations to meet the requirements of an estoppel. The caveatees do not profess to have been ignorant of the circumstances surrounding the execution of this will, but on the other hand, claim to be possessed of such knowledge of the facts and circumstances as to justify them in going into a detailed statement of the facts and circumstances surrounding

the execution of the will and codicil, and to state that the same was executed according to law, and that the same was not procured by means of misrepresentation, circumvention fraud and undue influence ; that the said testatrix was a person of fair intelligence and the said will was executed by her own free will and without any undue influence, fraud or misrepresentation, after reading and understanding fully the contents and provisions of said will and codicil.  Nor does it appear anywhere in the pleadings that any act, representation or conduct on the part of these caveators, or either of them, have induced the executors to take any action with reference to this estate ; nor do they allege that by reason of anything done by these caveators have they acted and been misled and been in-jured.

·  An estoppel embraces three elements on the part of the party claiming the benefit of it.—Ignorance of the truth.—Action or inaction induced by conduct of other party.—And injury as a result of such action or inaction.  As the record shows no such allegations, no issue or issues on the question of estoppel could properly be framed by the Orphans' Court.

BOYD, J., delivered the opinion of the Court.

This is an appeal by the executors named in the last will and testament of Margaret Shipley from an order of the Orphans' Court of Washington County directing issues to be sent to the Circuit Court of that county, which were framed on the petitions of Nancy E. Izer and husband, A. P. G. Shipley and L. G. S. Shipley, by George Downey, his next friend, who filed caveats to said will.  Emma F. Davis and husband also filed a petition to be made caveators, which is involved in another case at this term and will be there disposed of.  Mrs. Shipley left seven children, namely, Mrs. Izer, Mrs. Davis, Mrs. John W. Hemphill, Wynkoop L. Shipley, A. P. G. Shipley, L. G. S. Shipley and Lester Shipley.  A petition was filed by Mr. and Mrs. Izer on October 4th, 1901, and the executors answered it and then there were a number of other pleadings filed.  Mr. and Mrs. Davis, A. P. G. Shipley and

L. G. S. Shipley, by George Downey, his next friend, were afterwards made parties caveators. L. G. S. Shipley, who is still under twenty-one years of age, then filed a paper repudiating the act of his next friend, and A. P. G. Shipley has since directed his caveat to be dismissed.

The will was admitted to probate on the 4th day of December, 1900, and on the seventh of that month letters testamentary were granted to the appellants. On December 28th, 1900, Mr. and Mrs. Hemphill, L. G. S. Shipley, Mr. and Mrs. Izer, A. P. G. Shipley and Lester Shipley, signed a paper under their hands and seals reciting that "in consideration of the agreement of each made hereby with the other," they would not contest the validity of the will and codicil, or any part thereof. That paper is marked "Exhibit A" and will be so referred to. On January 29th, 1901, Wynkoop Shipley and Emma F. Davis and husband filed a caveat to the will and on February 12th, 1901, all of the other heirs filed in the Orphans' Court a petition asserting that the allegations in that caveat were untrue and unfounded, protesting against it and praying that the administration of the estate might be continued in the hands of the executors without further interference. That is marked "Exhibit B." On September 27th, 1901, the executors stated an account, which has not yet been ratified by the Court, and all of the children of Mrs. Shipley and the husbands of the three daughters, signed a paper marked "Exhibit C," in which they state that they "having examined the first account of Edwin J. Farber and Dr. V. M. Reichard, executors of said deceased, stated by them this day in the Orphans' Court of Washington County, hereby assent (to) the same as correct and respectfully ask the Court to approve and ratify the same." That paper was not filed in Court until February 1st, 1902, but was signed on September 27th, 1901, and was before the Court when the order appealed from was passed. The caveat originally filed by Wynkoop Shipley and Mr. and Mrs. Davis was dismissed by them.

After the executors had in their pleadings referred to Exhibits A, B and C, the caveators sought to avoid the effect of

them by alleging that when they signed them they were not aware of the facts which they afterwards ascertained in reference to the fraud, undue influence, etc., practiced by one of the executors on the testatrix. The caveators filed petitions asking that nine issues be framed and transmitted to the Circuit Court for trial by a jury. They relate to the execution of the will, the alleged undue influence, misrepresentation, fraud, etc. On the same day the caveatees filed a petition saying that their answers involved the right of the caveators to maintain their caveat and asking for issues. They submitted thirteen issues in reference to the execution of the papers referred to as Exhibits A, B and C—whether they were executed with knowledge of their contents, whether they were signed with knowledge of the material facts and circumstances attending the making and execution of the will, whether the caveatees or the other heirs relied on and acted on these papers, whether they at any time concealed from the caveators any facts material to the validity of the will and codicil, etc. They also excepted to the granting of issues proposed by the caveators, because these preliminary questions had not been disposed of. The Orphans' Court, however, ordered that the nine issues proposed by the caveators be sent to the Circuit Court and this appeal was taken from that order.

Leaving out of consideration for the present the fact that L. G. S. Shipley is under twenty-one years of age, there can be no doubt that the action of the Orphans' Court was erroneous, in ordering the issues to be sent to the Circuit Court, at the instance of Mr. and Mrs. Izer and A. P. G. Shipley, without it being first determined whether they were precluded by their conduct from filing the caveat. The petition addressed to the Court and called Exhibit B states that the allegations made in the caveat of Wynkoop Shipley and Emma F. Davis " of undue influence, fraud and misrepresentation, and alleged to have been exercised by V. Milton Reichard and Edwin J. Farber, executors named in said will, are false and without any foundation in fact and your petitioners on the contrary

further show and allege from their knowledge of the circumstances and surroundings of their deceased mother and from their intimate knowledge and acquaintance with the said Reichard and Farber, that all of said allegations in said caveat so far as they reflect upon the character and conduct of the said Reichard and Farber are unjust, untrue and unfounded in fact," and the petitioners protest against the caveat and ask to be made caveatees and that the administration of the estate be continued in the hands of the said executors without further interference. The will having been already admitted to probate and letters granted to the executors, they were the representatives of the estate and it was their duty to appear to the caveat filed and conduct the defense. The caveators could not properly have made the other children parties to the caveat but on the application of the latter "the Orphans' Court in their discretion might have so ordered." *Little Sisters of the Poor* v. *Cushing*, 62 Md. 416. When then Mrs. Izer and the other parties filed the petition called "Exhibit B," they not only placed themselves on record as opposed to the caveat, but asked to be made parties caveatees, and then charged that the very things they now rely on to sustain their caveat were false and untrue. With that petition of record, the appellees filed their petition and caveat, in which they allege the exact opposite of what they had previously stated, without even attempting to assign any reason for thus shifting their position. They not only did not inform the Court that they had agreed under their hands and seals not to contest the validity of the will and codicil, and had given their assent to the approval and ratification of an account stated by the executors more than nine months after they had qualified, but contradicted their petition, addressed to and filed in the Orphans' Court, without one word of explanation and never attempted to explain their position until after these facts were brought to the attention of the Court by the executors. If they did not have such knowledge in reference to the matters alleged in the original caveat filed by Mrs. Davis and others, as to enable them to speak of them, then they ought not to have

alleged that they had, and if it be true that they then had the knowledge, they cannot now be permitted to contradict what they thus deliberately put on record, without giving some sufficient reason for doing so.    In *Fisher* v. *Boyce*, 81 Md. 52, this Court quoted with approval that " A party cannot, either in the course of litigation or in dealings *in pais*, occupy inconsistent positions ; and where one has an election between several inconsistent courses of action, he will be confined to that which he first adopts.    Any decisive act of the party done with knowledge of his rights and the facts, determines his election and works an estoppel."    See also *Scanlon* v. *Walshe*, 81 Md. 118; 11 *Am. & Eng. Ency. of Law* (2nd ed.) 446.    While there may be lacking some of the elements of a technical estoppel in this case, there can be no question that the position now taken by the appellees is utterly inconsistent with that previously taken by them, and the adults, at least, should not be permitted to occupy such apparently contradictory positions unless they give some satisfactory explanation for so doing.

There is no class of cases where it is of more importance to apply such doctrine than in caveats to wills.    It may be that if these appellees had not taken the position they did with reference to the first caveat filed, those caveators would have had all the questions now raised finally determined and thus have put an end to such litigation.    It is a great injustice to those desirous of or interested in having the will sustained to thus postpone the final disposition of the case.    Some of the children of Mrs. Shipley have consistently opposed any attack on the will and if the others are to be permitted to thus shift their positions from time to time, it must necessarily result in great expense and delay in the final settlement of their mother's estate.    It was therefore incumbent upon the appellees to satisfy the Orphans' Court that they had been imposed on and had obtained knowledge of facts previously unknown to them, and inasmuch as they had filed in that Court the petition of February 12th, 1901, they should have been required to have made in their caveat a satisfactory explanation of the seeming inconsistencies, and having failed to do so the Orphans' Court.

should have refused to direct issues to be framed or grant
other relief on that petition.   Inasmuch as Exhibits A and C
were not of record in the Court when the caveat of Mrs. Izer
was filed, there might be some excuse for not referring to
them, although it was only fair to the Court to do so, but no
Court should entertain a petition which is flatly contradicted
by the parties themselves by a previous petition on the same
subject of record in that Court.   There can be no doubt that
Exhibit B and the petition of the present caveat are contradic-
tory.   We have not overlooked the fact that in the Orphans'
Court great latitude is allowed and technicalties are not favored,
but this is not a question as to whether the pleadings are
technically defective, but whether the petitioners are entitled
to relief when they base their claim for it on what they have
themselves said are untrue and false.

If the caveat of Mrs. Davis and Wynkoop Shipley had gone
to trial, and had been decided against the caveators, it could
not have been contended that these appellees could have filed
this caveat after what they had done under the other one.   Do
they occupy any better position by reason of the fact that
those caveators dismissed their proceedings ?   We think not,
unless they satisfactorily establish that what they then alleged
in Exhibit B was the result of having been imposed on by the
executors or some one interested in sustaining the will, and
that what they now rely on was ascertained subsequently by
them.   And in order to get the benefit of those matters they
should allege them in the petition, and not wait until they are
forced to do so by the answer and other pleadings of the ca-
veatees.   Their position is somewhat analogous to that occu-
pied by the parties in *Worthington* v. *Gittings*, 56 Md. 542,
and *McCambridge* v. *Walraven*, 88 Md. 378, where it was
held that relief should only be granted on direct application
to have previous judgments stricken out, in which the fraud
or collusion relied on must be distinctly charged, and it was
not sufficient to set them up in pleadings filed subsequent to
the answer.   It is true that in those cases judgments had
been entered by the Orphans' Courts and there is therefore

that marked difference between them and the case now under consideration, but they are analogous in this respect; that inasmuch as the petition of these appellees, referred to as Exhibit B, was on record in the Orphans' Court, in which they distinctly alleged that it was not true that there had been any undue influence, fraud, misrepresentation, etc., exercised or perpetrated in reference to this will, they cannot now ask relief of that Court on the ground of undue influence, fraud, etc., until they get rid of the effect of Exhibit B, as it is a bar to relief on any ground covered by it, so long as it remains unexplained. In other words, the Orphans' Court cannot be called upon to determine, *at the instance of the appellees*, that the will was invalid, or that there was undue influence, fraud, etc., when there is on its records the other petition addressed to that Court and signed by all of the appellees alleging the contrary, unless it be properly alleged and proven that the appellees afterwards acquired knowledge under such circumstances as now justify them in making these charges. We think that can be alleged in the petition and caveat and need not be by a separate application, as was necessary where there were judgments, as in the two cases cited above, but it cannot be done by what are called in this record replications, surrejoinders, etc., as it is incumbent on the appellees to explain their seemingly contradictory positions before they can invoke the aid of the Court.

The petition of the appellees filed on October 4th, 1901, can with leave of the Orphans' Court be amended by making the necessary allegations, but it is proper to add here that the record does not show that that petition was sworn to and, if an amendment is allowed making such charges as are above referred to, the Court should require the petition to be under oath. If the petition as amended be then sufficient the executors will be entitled to have these preliminary questions first disposed of. They cannot be required to try the issues as to the validity of the will, etc., until it is first determined whether the caveators are in a position to contest it. We cannot now determine the form of issues that can be framed raising those

preliminary questions, but if the pleadings when amended raise issues of fact, either party will be entitled under the statute to have them determined before those concerning the validity of the will can be sent to a Court of law.

We have mainly relied on Exhibit B for the conclusion we have above announced. That is because it was a part of the records of the Court in reference to this will, and therefore the appellees were required to satisfactorily explain it before the Court should consider their petition and caveat. Exhibits A and C were not of record and were in the custody of the appellants and they were therefore matters of defense and not *necessary* to be referred to in the petition. As they will doubtless be relied on in any further proceedings, it is proper that we should briefly refer to them. The appellees contend Exhibit A cannot avail the appellants because they are not parties to it, but the answer to that is that they represent the estate and hence represent Mrs. Hemphill and others who are opposed to the contest over the will. It cannot be said that Mrs. Hemphill, for example, is not liable to suffer injury by having a contest over the will, as the expenses incident to such a contest will necessarily affect her interests. It is clear that Mrs. Izer and the other adults who signed that paper are bound by it, unless they succeed in establishing that it was executed by reason of fraud perpetrated on them, and that they were then ignorant of the real facts. So far as the infants are concerned, it would not be binding on them if they disaffirmed it, but if the adults knew they were infants they would not be relieved by reason of their minority, and it would still be binding on the adults. It cannot be said that those who are not now seeking to have the will set aside have not acted on the agreement, for thus far they have. Exhibit C was signed by all the children of the testratrix, but unless the Court approves and ratifies that account, it does not very clearly appear how that paper would of itself be material, excepting in so far as it reflects upon the question of fraud and the knowledge of the caveators. It may throw some light on those questions, as it was executed nine months or more after the will was probated.

The only other question we are called upon to consider is the caveat of L. G. S. Shipley, In the first place it may be observed that his petition does not make any allegations excepting by reference to that filed by the Izers. As we have said that it is not in proper shape, that of young Shipley will necessarily fall with it. The issues directed to be sent to the Circuit Court are on the petition and caveat "of Mary E. Izer and Charles B. Izer, her husband, A. P. Gorman Shipley and L. G. Stanhope Shipley, by George Downey, his next friend," and there are no separate issues on behalf of L. G. S. Shipley. He cannot therefore have any standing in Court with the petition of the Izers out of Court, and the order of February 5th, 1902, must be reversed as a whole and not merely in part.

But this record discloses a most peculiar condition of affairs. The petition of L. G. S. Shipley, by George Downey, his next friend, is accompanied by a paper signed by L. G. S. Shipley, nominating and appointing George Downey, his next friend, to file the caveat, and on January 21st, 1902, L. G. S. Shipley filed another paper, under oath, in which he requested the Orphans' Court to dismiss the caveat so far as he was concerned, and stating that he revoked the authority given to George Downey. There can therefore be no effect given to the original authority attempted to be conferred by L. G. S. Shipley for if he could by such a paper confer the authority on the next friend he certainly would be equally competent to revoke it—at least on payment of the costs incurred by the next friend. It is not, however, the practice in this State that the next friend must be appointed by the infant. In equity all infants may sue by their next friend "subject, however, to such orders as the Court or Judge may direct for the protection of infants," Art. 16, sec. 125, and at law the next friend has control of the suit as between him and the infant. *Wainwright* v. *Wilkinson*, 62 Md. 146. But he is always subject to the control of the Court for the protection of the infant. If this were not so any one might involve an infant in litigation by making himself his next friend. The Court has power to revoke his authority,

remove him and if it be necessary to appoint another in his place. *Deford* v. *State*, 30 Md. 199; 14 *Ency. of Pl. and Pr.*, 1041. The Orphans Court can remove a next friend and appoint another in his place in order to let the first one testify in behalf of the infant, upon the costs already incurred being secured, and it is error not to do so. *Mills* v. *Humes' Executors*, 22 Md. 346. And it would seem that they can undoubtedly remove one if they believe it to be to the interest of the infant. In this case it was the duty of the Orphans' Court to inquire into the application of the infant, who is nineteen years of age, and if they found that the next friend was not acting for the interest of the infant, or was acting in the interest of the other parties, to remove him. It is certainly not right to permit a next friend to compel an infant to attack his mother's will and when an infant of the age of this young man requests the Court to dismiss a caveat thus filed it is the duty of the Court to investigate the subject and unless they find that it is proper for his interests that the proceeding be continued, it should be dismissed. It would be a shocking rule of law to hold that a next friend is to be permitted to force a young man nineteen years of age to attack the will of his mother, whether it be to his advantage to do so or not. When this young man made application to have the caveat dismissed the Court should have brought him and the next friend before it and if satisfied he understood what he was doing, it ought to have removed the next friend on his being paid or secured for all costs incurred by him to that time. It would be unreasonable to expect a jury to find against the will on a caveat filed by one who is nineteen years of age, if he was of sufficient intelligence to understand what he was doing, if he went on the stand and testified in favor of sustaining it, and it would simply be incurring useless expense and costs to send issues in his name to a Court of law.

This record shows that Mr. and Mrs. Izer are mainly responsible for the proceedings and they will be required to pay one-half of the costs in this Court, including the costs of making up the record. A. P. Gorman Shipley dismissed his

caveat after the record was transmitted to the Court so he will be required to pay one-fourth of the costs in the Court and of making up the record. As George Downey ought not to have insisted upon proceeding after objection by L. G. S. Shipley without having that question passed on by the Court, he will be required to pay individually the other fourth of the costs mentioned. We have not overlooked the order of the Court of February 1st, 1902, in which the exception to the rejoinder of the caveatees was sustained but that did not relieve him from the action suggested above. He was not justified in thus urging the caveat of L. G. S. Shipley without having that question properly passed on by the Court.

As the order of February 5th, 1902, was erroneous the case must be reversed.

*Order reversed and cause remanded, Nancy E. Izer and Charles B. Izer to pay one-half, A. P. Gorman Shipley one-fourth and George Downey the other fourth of the costs in this Court, including the cost of making up the record; the costs below to abide the final result of the case.*

(Decided June 19th, 1902.)