SAFE DEPOSIT & TRUST COMPANY ET AL., EXECUTORS, *v.* WILLIAM HOOPER HANNA.

[No. 52, April Term, 1930.]

*Decided June 24th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Randolph Barton, Jr.,* and *Robert B. M. Barton,* with whom was *F. Fulton Bramble* on the brief, for the appellants.

*George Arnold Frick,* with whom was *Charles F. Harley* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

On August 9th, 1929, William H. Hanna filed in the Orphans' Court of Baltimore City a caveat to the will of his deceased father, Charles F. Hanna, attacking the legal execution thereof and alleging mental incapacity and undue influence. The prayer of the petition is that the appellants be required to answer, that the order of the orphans' court previously passed admitting the will to probate be annulled and set aside, and that letters testamentary theretofore granted to the appellants be revoked. The appellants filed an answer to the petition, alleging that the execution of the will was in accordance with the requirements of the law, and denied mental incapacity of the testator at the time of the making of the will, or that said will was procured by undue influence. The answer further alleged that, subsequent to the granting of letters testamentary to the appellants, pro-

454

ceedings were instituted in the Circuit Court of Baltimore City, entitled "Safe Deposit & Trust Company of Baltimore, executor, etc., v. Leila E. Hanna, executrix, etc.," for the construction of the will of Charles F. Hanna, and other purposes as recited in the bill; that the appellee was one of the parties to said proceeding and had actual knowledge thereof; that as a result of said proceedings the Circuit Court of Baltimore City, on October 7th, 1927, passed a decree therein; that by said decree the court construed the will with reference to certain provisions thereof affecting the appellee, and directed that certain payments be made by the executor; that in pursuance of said decree, many of the payments therein directed, and especially those affecting the appellee, have been made by the appellants; that in view of said proceedings, and of the action heretofore taken thereunder, the appellee is not entitled to sustain the petition and caveat filed by him against the will and codicil of Charles F. Hanna. By a replication filed, the appellee joined issue on the matters alleged in the answer, so far as the answer denied or avoided the allegations of the petition and caveat; and alleged that the appellee was out of the State of Maryland during the pendency of the proceedings in the Circuit Court of Baltimore City, and for several months after the termination of same; that he had no knowledge or information concerning the proceedings until several months after the termination thereof. He further alleged that the validity vel non of the will of Charles F. Hanna was not passed upon in said proceedings; denied the jurisdiction of the Circuit Court to pass upon the issues raised by the caveat; alleged that he has personally received no payments by the trustee made under the decree of the Circuit Court, or in any way out of the estate of Charles F. Hanna, and that if any payments were made to anybody out of said estate in any way affecting him, they were made against his will and without his assent or consent. The Orphans' Court, by its order of March 4th, 1930, adjudged and decreed that the appellee was not precluded from caveating the will of his deceased father, and

directed that the issues requested be sent to the Baltimore City Court to be tried by jury. The appeal to this court followed.

The appellee filed in this court a motion to dismiss the appeal, which will be first disposed of. The ground upon which this motion is based is that the order of the orphans' court appealed from was not a final order or decree, or in the nature of a final order or decree, and that therefore the appeal was prematurely taken. We are of the opinion that that position cannot be sustained. The order here appealed from determined the proper parties to the caveat proceeding, determined the issues to be tried, and directed that they be sent to a court of law. No tribunal other than this court has jurisdiction to review such an order of the orphans' court. In no appeal from the result of a trial, in a court of law, of the issues transmitted from the orphans' court, could this question be here reviewed. It could form no part of the record in the lower court. In *Langhirt v. Hicks,* 153 Md. 31, the finding of the orphans' court, from which an appeal was taken, was that "the caveatrix is not estopped or barred from prosecuting said caveat and that she is entitled to have the issues of fact raised by her said caveat and the answer thereto, as to the validity and genuineness of the alleged last will and testament of Margaretha Langhirt, deceased, sent to a court of law to be determined by a jury." In dismissing the appeal this court said: "It is not from a final order, or indeed from any effective order. No doubt another order would have followed, sending issues to a court of law. From such an order an appeal would lie. The order passed was nothing more, in effect, than the opinion of the court. *Newell v. Dundalk,* 149 Md. 182."

The appeal on its merits raises a single question, and that one of law, it being whether or not the facts contained in the record, all undisputed, present a situation which estops the appellee from caveating the will of his father. The facts, as we have said, are undisputed, and those vital to the decision of this case are substantially as follows: The will of Charles F. Hanna was executed on May 20th, 1920, and a

codicil thereto on February 20th, 1924. He died on August 11th, 1926. The will and codicil were probated, without contest, on August 18th, 1926, and letters testamentary were granted to the appellants. The testator left surviving him two sons and three daughters as his only heirs at law. The will made provision for each of these, at considerable length and in language not altogether clear or free from ambiguity. It also contained provisions which were apparently in conflict. Shortly after the probate of the will, a bill was filed in the Circuit Court of Baltimore City by the Safe Deposit & Trust Company of Baltimore, one of the executors of the will, against Leila E. Hanna, the other executor, Leila E. Hanna, individually, and the other children of the deceased, with their respective husbands and wives. Robert Albert and William C. Briddell were also made defendants, they having previously secured attachments on judgments against the appellee, laid in the hands of the executors and trustees, seeking to subject the interest of the appellee to the payment of these judgments. The bill recited the provisions of the will, and prayed that the court assume jurisdiction, construe the will, appoint a trustee or trustees to administer any trust that the court might find to be created by the will, and that the administration of the estate be thereafter conducted and completed under the supervision of that court. All of the defendants were adults, and all were personally summoned to the bill with the exception of the appellee, who was then absent from the state and against whom, after the return of two *non ests,* an order of publication was had. The circuit court assumed jurisdiction and passed its final decree in that proceeding on October 7th, 1927, wherein the will was construed, trustees appointed, with directions as to the administration of the estate. By that decree it was determined that, under the will of Charles F. Hanna, William H. Hanna was entitled to an annuity, that the attachments of Albert and Briddell were effective against said annuity, and directed that the trustees should apply the annuity in certain proportions to the attaching creditors until such time as the full amount of their claims should be paid, these payments to the creditors to be

made monthly, as the payments of the annuity were provided for in the will. It is agreed that the first actual notice of the proceedings in the circuit court was had by the appellee on April 28th, 1928. The record discloses that, under the terms of the decree passed in the case construing the will, payments were made monthly to the attaching creditors of the appellee, beginning December 13th, 1927, and continuing until September 11th, 1929.

It is firmly established in this state that one cannot take under and by virtue of the provisions contained in a will, and then attack the instrument as to its validity. In the case of *Beall & McElfresh v. Schley,* 2 Gill, 181, our predecessors said: "From the earliest case on the subject, the rule is, that a man shall not take a benefit under a will, and at the same time defeat the provisions of that instrument. If he claims an interest under an instrument, he must give full effect to it, as far as he is able to do so. He cannot take what is devised to him, and, at the same time, what is devised to another, although, but for the will, it would be his; hence he is driven to his election to say which he will take. * * * The modern English cases do not, we apprehend, extend or enlarge the principle of election. That principle, as applicable to this case, we take to be this: That no one shall be permitted to take under an instrument, and defeat its provisions, or, in the language of Lord Erskine, a person shall not claim an interest under an instrument, without giving full effect to that instrument as far as he can. This is not a new doctrine; it will be found to have been announced as long since as the case of *Noys v. Mordaunt,* 2 Ves. 581. Lord Redesdale, in 2 *Scho. & Lef.* 449, 451, says the general rule is, that a person cannot accept and reject the same instrument; and he declares it to be the foundation of the law of election, upon which courts of equity, particularly, have grounded a variety of decisions in cases, both of deeds and wills." See *Barbour v. Milchell,* 40 Md. 151; *Fisher v. Boyce,* 81 Md. 46; *Scanlon v. Walshe,* 81 Md. 118; *Reichard v. Izer,* 95 Md. 462; *McGehee v. McGehee,* 152 Md. 661; *Lewis v. Carver,* 140 Md. 121; *Lewis v. Mason,* 156 Md. 32;

*Langhirt v. Hicks, supra.* Many of these cases adopt the language of *Bigelow on Estoppel,* 562, wherein it is said: "A party cannot, either in the course of litigation or in dealings *in pais,* occupy inconsistent positions; and where one has an election between several inconsistent courses of action, he will be confined to that which he first adopts. Any decisive act of the party done with knowledge of his rights and of the facts, determines his election and works an estoppel." In *Reichard v. Izer, supra,* Judge Boyd, speaking for the court, said: "There is no class of cases where it is of more importance to apply such doctrine than in caveats to wills." In *Meyers v. Kooke,* 146 Md. 471, it was held that one who participated in an equity proceeding for the construction of a will, and accepted and retained a legacy paid to her in accordance with a decree for distribution rendered in such proceedings, is estopped subsequently to prosecute a caveat to the will in the orphans' court, regardless of whether the equity court, in passing the decree for distribution, improperly assumed jurisdiction which the orphans' court is ordinarily entitled to exercise. In that case the rule as stated by *Bigelow on Estoppel,* 562, is approved and adopted as follows: "It is an old rule of equity, that one who has taken a beneficial interest under a will, is thereby held to have confirmed and ratified every other part of the will, and he will not be permitted to set up any right or claim of his own, however legal and well-founded it may otherwise have been, which would defeat or in any way prevent the full operation of the will." In *Schmidt v. Johnson,* 154 Md. 125, Judge Parke, speaking for the court, said: "It is well settled that a person cannot accept and reject the same instrument, but must abide his choice of remedies, or of rights arising thereout. So if one is paid his legacy, and gives an acquittance to the executor, he ordinarily cannot assail the validity of the will under which he becomes entitled. But this general rule is subject to the conditions that when the party acted he must have known of the existence of the circumstances which, giving rise to inconsistent rights, made necessary a choice between them, and that he had the intention to elect,

either expressly or by acts which imply choice and acquies-cence. Unless, therefore, the legatee here knew, or was put on inquiry, at the time of the payment of the legacy and of the execution of the release, of the lack of testamentary capacity of his mother when she executed her will, and of the undue influence practiced upon her and constraining her will in its making, the basis of an election is gone. He could not be held to have chosen between two rights when he knew of the existence of but the one he accepted, nor to have had the intention to reject something of whose real or potential actuality he was ignorant. If the rights of third parties have not intervened, and he is not chargeable with laches after discovery of the facts which would create an intestacy and give him the status of an heir or next of kin and dis-tributee, the legatee will be permitted to revoke his accept-ance of the legacy, and his release will be rescinded or treated in law as a nullity to enable him to prosecute his claim as distributee and heir." *Johnston v. Schmidt,* 158 Md. 555.

In the petition in this case it is not alleged that the appel-lee had any less knowledge of evidence which would render the will of his father invalid, at the time the payments were made by the trustees, under direction of the decree of the Circuit Court of Baltimore City, to his creditors, than he had at the time of filing the caveat. So the effect of acquir-ing knowledge subsequent to the acceptance of the legacy, which question was presented and passed upon in the *Schmidt* cases, is not present here. The single question is whether or not the payment to the appellee's creditors is, for the pur-pose of estoppel as applied to him, of equal consequence and import as payment directly to him. Is the payment of the appellee's annuity, arising out of the provisions of his fa-ther's will, to his creditors, under the decree of the Circuit Court passed in a proceeding wherein he was not personally summoned, but of which he gained personal knowledge six-teen months prior to the filing of his caveat, during which time payments were made on sixteen different dates, many of such payments being made public record by the reports of

the trustee filed on May 11th and August 15th, 1928, sufficient to prevent the appellee from filing a caveat on August 9th, 1929?

There being no doubt, upon the authorities heretofore cited, that payment directly to the appellee would have worked such an estoppel, a narrower question is presented: Does payment to his creditors, with his knowledge, work a like result? The basis for these payments was the decree of the Circuit Court, of which he had no actual knowledge, and in proceedings where he was not personally summoned; and it is clear that, as to all payments made before the acquisition of this knowledge by him, he could not be said to have either consented or assented, and therefore, if he had filed the caveat immediately or within a reasonable time after acquiring such knowledge, we do not think he would have been estopped. But this he did not do. He permitted monthly payments to continue for sixteen months, after having knowledge; payments which, while not made directly to him, necessarily redounded to his benefit, by satisfying debts in the shape of judgments upon which attachments had been issued. While his attitude was passive, there was, in our opinion, nevertheless, acquiescence, and such acquiescence as would preclude him from contesting the will. He remained silent for sixteen months after he should have spoken, receiving benefits and advantages under the will. He has been a beneficiary under the will, and must be held to have confirmed and ratified every other part of the will. He will not now be permitted to set up any right or claim of his own which would defeat or in any way prevent the full operation of the will. The views herein expressed being contrary to the order of the orphans' court from which the appeal was taken, it will be reversed.

*Order reversed, and case remanded for further proceedings in conformity with this opinion, with costs to the appellants.*