# CAUGHY *v.* SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE

## EXECUTOR AND TRUSTEE, ETC., ET AL.

### [No. 12, October Term, 1950.]

254

*Decided November 3, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, and HENDERSON, JJ.

*Harry E. Karr* and *Eldridge Hood Young*, with whom was *William R. Price, Jr.*, on the brief, for the appellant.

*Charles Markell, Jr.* with whom were *Cook, Ruzicka, Veazey & Gans* on the brief, for the appellee Safe Deposit and Trust Company of Baltimore, Executor and Trustee under the last will and testament of Frank J. Caughy, deceased.

*Charles G. Page* for the appellee George M. White, Administrator of the Estate of Adelaide Caughy, deceased.

HENDERSON, J., delivered the opinion of the Court.

The question presented in this case is whether the estate of Adelaide Caughy, who died January 8, 1949, is entitled to the sum of $8,674.52 out of the balance of some $25,000 held by the trustee under the will of Frank J. Caughy.

Mr. Caughy died in 1930, leaving a will executed in 1927 which bequeathed to the Trust Company as trustee, "a sufficient portion of my estate * * * to produce the net income of one thousand dollars ($1,000) over and above all expenses, to be held by it, in trust, to pay out of the net income therefrom the sum of one thousand dollars ($1,000) in equal monthly installments, accounting from the date of my death, to my sister, Adelaide Caughy, during her life, into her own hands and not into the hands of another, whether claiming by her authority or otherwise; if the net annual income from the said fund should at any time be less than $1,000.00 the deficiency shall be made up out of principal thereof, it being my intention that said sister should receive one thousand dollars ($1,000) each year during her life; any surplus income to be added to principal.

"Upon the death of my said sister the said trustee shall pay her funeral expenses and shall then pay over,

transfer and deliver the balance of the principal of said fund in its hands to my wife, Florence H. Caughy, absolutely".

By item 2 the testator left the residue of his estate to his wife. By item 3 he directed the collateral inheritance tax "payable on the gift of income to my sister" to be paid out of the residue of his estate.

When Mr. Caughy died it was found that his assets were far insufficient to yield $1,000 a year. The executor (who was also named as trustee) made certain payments to both the sister and widow during the first three years, then discontinued payments until 1939. The trust fund was not set up, so that income could be earned upon it, until 1942. It seems to be agreed that neither the widow nor the sister had any other source of income. By agreement of the parties, the executor prior to 1942 and the trustee thereafter, made payments to the widow aggregating $12,554.36 during the period from Mr. Caughy's death to the death of the life tenant on January 8, 1949. During the same period the executor and trustee paid the aggregate sum of $10,075.48 to Adelaide Caughy, the life tenant. Except in the first two years, Miss Caughy was never paid the full $1,000. Mrs. Caughy claims that the deficiency in payments over the period, aggregating $8,674.52, without interest, passes to her as residuary legatee. The estate of Miss Caughy claims this sum, relying upon the provisions of the will and the terms of the agreements between the parties.

It seems perfectly clear from the language of the will that the testator intended his sister to receive $1,000 a year during her life. It may be true, as suggested, that at the time the will was drawn he did not anticipate the effect that the ensuing depression would have upon his estate, but that cannot alter the legal effect of the language. *Perkins v. Iglehart,* 183 Md. 520, 528, 39 A. 2d 672. In *Green v. Green,* 182 Md. 571, 575, 35 A. 2d 238, 240, it was said: "But in the absence of a provision in the will to the contrary, income accruing during the continuance of a life estate belongs to the life tenant,

and at his death passes to his personal representative, if it has not otherwise been disposed of. * * * It follows that the widow in this case was entitled as the life tenant to all rents accruing from the trust estate. It is a cardinal rule of construction that the law favors the earliest vesting of estates, and the court will hold an estate to be vested whenever it can fairly do so without doing violence to the language of the will. *Tayloe v. Mosher*, 29 Md. 443, 457; *Nicodemus National Bank v. Snyder*, 178 Md. 140, 12 A. 2d 518. Consequently, the court will never hold that the testator intended that any income accruing during any portion of the life estate should accumulate for the benefit of the remaindermen, unless an indication of such intention appears expressly on the face of the will or arises from its provisions by necessary implication. *Burt v. Gill*, 89 Md. 145, 152, 42 A. 968, 970; 43 A. 177."

The appellant contends that the fact the trust in the instant case was a spendthrift trust is evidence of an intention that the right to accrued income should lapse upon the death of the life tenant. We think the weight of authority is to the contrary. The point was assumed, if not decided, in *Fetting v. Flanigan*, 185 Md. 499, 45 A. 2d 355; *Simon v. Safe Deposit & Trust Co.*, 190 Md. 468, 59 A. 2d 199, and *Hitchens v. Safe Deposit & Trust Co.*, 193 Md. 62, 66 A. 2d 97. In *Safe Deposit & Trust Co., v. Robertson*, 192 Md. 653, 659, 65 A. 2d 292, 294 the Fetting case was cited as holding that "creditors of a deceased beneficiary [of a spendthrift trust] could reach funds in the hands of his personal representatives". In Griswold, Spendthrift Trusts (2d ed.) § 352, p. 419 it is said: "The fact that a trust is a spendthrift trust does not make inapplicable the general law as to the right of the beneficiary's executor or administrator to sums due at the beneficiary's death. Insofar as the trustee's duty is to collect the income and pay it over to the beneficiary, the executor or administrator of the beneficiary of a spendthrift trust is entitled to receive all income which had accrued in favor of the beneficiary

at the time of his death, and which had not yet been paid by the trustee. * * * The rule stated here is applicable to payments of principal where owed to the beneficiary before he died, as well as to income". See also Scott, Trusts, § 158.1; Restatement, Trusts, § 158(2); In re Ryan's Estate, 294 N. Y. 85, 60 N. E. 2d 817; McKeown v. Pridmore, 310 Ill. App. 634, 35 N. E. 2d 376. We find nothing in the language of the trust in the instant case to take it out of the general rule. The direction that the trustee should pay the funeral expenses of the life tenant was in the nature of an additional bequest and does not affect the devolution of the unpaid balance due to the life tenant.

It was suggested in argument that insofar as the life tenant's right to $1,000 a year required encroachment upon the principal, the right was not cumulative, but lapsed in each year in which the demand for the payments of principal was not made. But the intention was clearly stated "that said sister should receive $1,000 each year during her life", any deficiency in income to be made up "out of principal". The case of Ryan v. Ward, 192 Md. 342, 349, 64 A. 2d 258, 261, is distinguishable. In that case we held that the right retained by the grantor to withdraw principal in any year, not in excess of a fixed sum per annum, was lost if not exercised during that year. The question was considered in connection with the "element of revocability". In the instant case no affirmative action or election on the part of the beneficiary was required, and her interest in the annual sum, whether payable from income or principal, was absolute and unconditional.

The main contention of the appellant is that Miss Caughy, by authorizing the executor and trustee to make payments to Mrs. Caughy in diminution of her right to $1,000 a year, in effect made an assignment pro tanto of the sums due her. It is argued that having agreed to a diversion of these funds, her personal representative cannot now charge the trustee or the remainderman with the amounts so diverted, citing Griswold, Spend-

thrift Trusts (2d ed.) § 306, p. 377 and Restatement, Trusts, § 152 comment (i). We think the agreements do not support this contention.

From the outset Miss Caughy took the position that any payments made to Mrs. Caughy should not jeopardize the trust fund. In a communication to the executor dated December 15, 1931, she stated: "The trust fund for me should be set up before distributions on account of the residue of my brother's estate are made; but I understand from you that you have not been able to set up the trust fund on account of the character of the assets of my brother's estate, and that you have been making payments to Mrs. Caughy on account of the residue; the payments made to her as shown by your First Administration account having been consented to by me." She then consented to the payment of $100 a month to Mrs. Caughy "on account of her interest in the residue of the estate".

On August 5, 1939, Mrs. Caughy wrote Miss Caughy suggesting that "Whatever income comes in be divided equally between us and that you wave (waive) any back income due you * * *." Miss Caughy replied that "I am willing to share the income from the estate * * * but at this time I am not willing as you suggest to waive any part of the accumulated back income due me." She also wrote the executor: "I am willing, in view of Mrs. Caughy's plight, to assist her to the extent of permitting you to pay to her one half the income from the estate, provided I can do so without in any way jeopardizing or waiving any of my rights or interests in the estate, but I am not willing to accede to her demand that I waive the back income due me."

On September 20, 1939, an agreement was executed by both parties in which Miss Caughy agreed to a division of the income "upon the distinct understanding that I am in no way waiving or giving up my right, or the right of my estate in the event of my death, to collect from my brother's estate the above mentioned balance of $6,675 due to me for the period to July 31, 1939 or to

collect from his estate any additional amounts due me which may arise by reason of the amounts received by me for the period after July 31, 1939 being less than the $1,000 per year given to me by my brother's will". On several occasions thereafter, in papers executed by both parties small sums were directed to be paid out of the principal of the trust fund "the payment to Miss Caughy to be on account of the unpaid balance of annuity due her to date and the payment to Mrs. Caughy to be on account of her interest in the estate". Finally, on February 9, 1948, there was an agreement that the trustee should make certain payments out of principal to Miss Caughy, in addition to one-half the income. Miss Caughy agreed, for herself and her heirs and personal representatives, to indemnify the trustee for "any loss, costs of expenses which you may incur or be put to by reason of making the said payments" to Mrs. Caughy of one half the income. The agreement recited that it was "without prejudice to any claim which she (Miss Caughy) or her personal representatives may have against the estate of Frank J. Caughy".

So far from being an assignment of her rights, these documents expressly reserved her rights and those of her personal representatives against the testator's estate. Her representative is not attempting to repudiate her directions to the trustee to make the payments, but insisting that such payments be charged against the residuary estate in accordance with the express terms of the agreements. Mrs. Caughy was a party to the agreements and is bound by them. Whatever disability may attach to the beneficiary of a spendthrift trust, in regard to attempted alienations in defiance of the restrictions, no disability attaches to the residuary legatee. Not only was Mrs. Caughy fully competent to agree that any advances to her should be charged against her interest in remainder, but her acceptance of benefits thereunder would preclude a change of position on her part. Compare *Surratt v. Knight,* 162 Md. 14, 17, 158 A. 1 and *Safe Deposit & Trust Co. v. Hanna,* 159 Md. 452,

457, 150 A. 870. By reason of the willingness of the life tenant to postpone her claim, which would otherwise have exhausted the estate, the trustee was enabled to build up the corpus to the sum of more than $25,000, and to make advances to the widow out of a fund to which she was not presently entitled. She cannot now repudiate the agreement or successfully contend that the advances should be charged against the share of the life tenant. Nor is there any merit in the appellant's claim of laches. She, and not Miss Caughy has benefited by the forbearance of the latter to assert her full claim and her consent to the advances.

*Decree affirmed, with costs.*