## V. MILTON REICHARD ET AL., EXECUTORS, *vs.* NANCY E. IZER ET AL.

*Wills—Party Denying Allegations of a Caveat Estopped to File Caveat on Same Grounds Without Proving Facts to Justify Change of Position.*

A caveat was filed to the will of a testatrix by two of her children alleging fraud and undue influence in its procurement. The other children filed in the Orphans' Court an answer denying the charges of fraud, etc.,

basing their denial upon their knowledge of the circumstances sur-
rounding their mother at the time of making the will. After the dis-
missal of that caveat, some of the children who had thus denied its
truth themselves filed a petition for a caveat making substantially the
same allegations of fraud and undue influence. It was held on a former
appeal that they were estopped to take this inconsistent position with-
out first showing that they had signed their answer as the result of fraud
practiced upon them, or that they had subsequently ascertained mate-
rial facts concerning the execution of the will relevant to the caveat.
Upon a remand of the cause, they offered certain evidence as to the
reasons why they had formerly denied the allegations of fraud, &c.,
which they now make, which evidence is examined in this case and
held to be insufficient to authorize them to maintain the caveat in con-
tradiction of their answer of record in the case.

Appeal from the Orphans' Court of Washington County.

Ths cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*J. Clarence Lane* and *M. L. Keedy* (with whom was *H. H.
Keedy, Jr.*, on the brief), for the appellants.

*Chas. D. Wagaman* (with whom were *Thompson A. Brown*
and *Jno. E. Wagaman* on the brief), for the appellees.

BOYD, J., delivered the opinion of the Court.

The question before us in this case is whether or not the
appellees have made such allegations in their amended peti-
tion and caveat as were necessary to avoid the effect of the
papers signed by them and referred to in *Reichard et al.* v.
*Izer et. al.*, 95 Md. 451. As is shown in that case, Wynkoop
Shipley and Emma F. Davis, a brother and sister of Mrs. Izer,
had filed a caveat to the will of their mother, Margaret Ship-
ley, which included the same grounds in substance as are now
relied on by the appellees. While that was pending in the Or-
phans' Court of Washington County, Mr. and Mrs. Izer and
others interested in the will filed, on February 12th, 1901, a
petition in that Court which was there called, and will be herein
referred to, as Exhibit B, in which they alleged " that all the
allegations made against the validity of the said last will and

testament and codicil thereto are untrue and unfounded in fact,
and that the allegations therein made of undue influence, fraud
and misrepresentation, and alleged to have been exercised by
V. Milton Reichard and Edwin J. Farber, executors named in
said will, are false and without any foundation in fact, and your
petitioners on the contrary further show and allege from their
knowledge of the circumstances and surroundings of their de-
ceased mother, and from their intimate knowledge and acquaint-
ance with the said Reichard and Farber, that all of said alle-
gations in said caveat so far as they reflect upon the character
and conduct of the said Reichard and Farber are unjust, un-
true and unfounded in fact." They then protested against the
caveat, asked to be made parties caveatees and that the admin-
istration of the estate might be continued in the hands of the
executors without further interference. They had previously
entered into an agreement not to contest the validity of the
will and codicil, and on September 27th, 1901, all of the chil-
dren of Mrs. Shipley, and the husbands of the married daugh-
ters, signed a paper stating that they had examined the first
account of the executors, acknowledged it to be correct and
asked the Court to affirm and ratify it. Under those circum-
stances we held in the former appeal that the Izers should not
be permitted to file a caveat to the will, unless they satisfac-
torily established that what they thus alleged in Exhibit B was
the result of having been imposed on by the executors or some
one interested in sustaining the will, and that what they now
rely on was ascertained subsequently by them. We further
held that it was necessary for them to make such explanation
in their petition and that with leave of the Orphans' Court *it*
could be amended. They did amend it, and we are now to
determine whether or not they have made such allegations as
give them a standing in Court, notwithstanding the papers
signed by them prior to filing their caveat.

As we are of opinion that Exhibit B is the most important
paper to be considered, we will examine the amended petition
to see whether it is sufficient in respect to that. In it. they
allege that when they signed Exhibit B they were ignorant of

the true facts surrounding the execution of the will and cod-
icil, signed it at the instance of Messrs. Farber and Reichard,
who advised them that the allegations in the Davis caveat
were untrue ; that they then believed that said charges, so far
as they reflected upon the character of either of the executors
were untrue, and in good faith and conscience signed that
paper.    They say "that thus having taken their position with
the caveatees in said Davis caveat, they were not in a position
and did not have the means of ascertaining any of the facts
which have since come to their knowledge."    That admis-
sion itself causes us to pause to inquire upon what theory one
sister can justify herself in going before a Court and solemnly
asserting that what another sister and brother had said is un-
true and unfounded in fact, and then afterwards, in the same
Court with reference to the same subject-matter, alleging that
it was true and attempting to explain her reason for such act
by what we have quoted above.    It was certainly more nat-
ural to go to the sister and brother to ascertain what facts
they relied on than to accept the statements of those against
whom such charges had been made, and, in the absence of
some valid reason for not adopting that course, it must be as-
sumed that she could have ascertained all the facts within
the knowledge of Mrs. Davis if she had used ordinary dili-
gence to do so.    But she not only did not do that, if we ac-
cept her statement in the amended petition, but by the course
she pursued deliberately placed herself in a position in which
she could not ascertain the facts within the knowledge of
of those caveators.    And she was not satisfied with that, but
she not only alleged that what they said was false, but based
that allegation on "their knowledge of the circumstances and
surroundings of their deceased mother and from their intimate
knowledge and acquaintance with the said Reichard and Far-
ber."    It is thus apparent that the petitioners have not justi-
fied any ignorance of facts that were in possession of those
caveators.

But what are the substantial allegations by which the appel-
lees seek to show newly discovered facts, after they signed

Exhibit B? In the first place they allege that after the Davis caveat was dismissed "V. Milton Reichard, one of the executors of said alleged will, stated that he knew that the will could be set aside on the ground of fraud, but that it was better that the caveat was dismissed, as long litigation would have resulted, and that he as one of the executors would protect the interest of Mrs. Shipley's children." Dr. Reichard positively denies in his answer that he ever made such a statement and it is asking a good deal to expect a Court to believe that he did, but if it be conceded that that is a question of fact to be passed on, the petition does not even allege before whom he made the statement and for aught that appears it may have been mere idle rumor, and without some more specific allegations about it, it certainly is not sufficient to justify the petitioners in now asserting to be true what they have said was false and thus subjecting this estate to the expenses of a trial. Then it is said that after Exhibit C was signed, the Orphans' Court required Farber to produce vouchers for certain sums claimed by him; that when he filed them the "petitioners were aroused as to the importance of an investigation, and they immediately filed an exception to said account," and "that the said Reichard then stated that he knew the account was not as it should be and was glad that the petitioners had excepted to it." But although it must be admitted that some of the items, included in what is called "Exhibit Vouchers" in the record, are to say the least of a remarkable character and such as should not be allowed, they amount to but a few dollars, and could not in any possible way reflect upon such issues as are sought to be raised by this petition, as they have no relevancy whatever to any of them. The items are for personal expenses of Mr. Farber, beginning nearly a year after the will was probated and some of them of a character that ought not to be charged to the estate. Of course the Orphans' Court should see that no expenses are allowed the executors, or either of them, which are not authorized by law, but there is nothing in these that could in the most remote way properly reflect upon the execution of the will. It might be added that Dr. Reichard

denies having made the statement attributed to him about the account, but if he did, it only showed that he was desirous of seeing the estate properly administered.

The petition goes on to say "that your petitioners then learned from letters written by Edwin J. Farber, prior to and about the time of the execution of the said alleged will, to Jacob A. Bricker, who had for some years been the confidential adviser of said decedent, and from other papers and persons, that the said Margaret Shipley had been induced to execute the said alleged will and codicil by the means hereinbefore alleged, to wit, by misrepresentation, circumvention, fraud and undue influence," and alleges that Farber having ascertained that Margaret Shipley had made a will, soon began to plan and contrive to have her execute another will and by divers methods and plans succeeded on January 20th, 1900, in having her make one, in which he was named as attorney for the executors; that he subsequently represented that that will was not properly and legally executed and sought the influence of Jacob A. Bricker, to have another will made, which resulted in the one now in controversy being executed. After making various allegations as to what Farber represented, the petition states "which representations will appear by reference to a copy of a letter from said Farber to said Bricker, filed herewith, marked 'Exhibit Letter,' as well as by other testimony which these petitioners will produce at the proper time." They allege "that they had no knowledge of the existence of the letters herein referred to during the pendency of the Davis caveat, nor could they have seen them if they had had such knwoledge, as said letters were in he possession of the attorneys for the caveators." What we have already said about their ignorance of facts within the knowledge of the caveators in the Davis caveat applies equally to this statement, but as special reliance is based on this letter, we will see what there is in it. In passing, it may be remarked that although the petition speaks of *letters* from Farber to Bricker, this is the only one filed.

It is dated April 17th, 1900, and states that the writer has just returned from Chicago, where most of the estate of Mrs.

Shipley came from through her father, John McCaffery, who
died there leaving a large estate.   The material suggestions
made in it may be stated as follows :  (a)  that he was informed
by the Judge of the Probate Court in Chicago that a foreign
executor will not be appointed by that Court, but must be a
resident, and he suggests that Mrs. Shipley's will be redrawn,
naming Mr. Bricker, Samuel Adams of Chicago and himself,
as joint executors ;  that if Bricker and himself could not,
Adams could serve, and Adams had written him a letter that
in that event he would give him (Bricker) his share of the
fees and they could do the same for Adams in Maryland.  He
adds that "I hope you will have my suggestions most kindly
made to Mrs. Shipley, and let me know if she will accede to
this suggestion, which I assure you is a good one ;"  (b)  that
Adams suggested that no one who is interested in the will, or
named in it as executor, trustee or legatee should be a wit-
ness to it, as that is against the law of Illinois ; that "Dr.
Reichard had better not be appointed one of the trustees, be-
cause we will want him as one of the witnesses to the will,
especially as he will be able to testify as one of Mrs. Ship-
ley's physicians, as to her sanity ;"  (c)  that Adams tells him
that it will be very beneficial to Mrs. Shipley's interest not to
compel the executors to give bond, as the expense, which
may amount to a thousand dollars, would be borne by the
estate.

  The will executed on April 25th, 1900, did name Messers.
Bricker, Farber and Adams, executors, but on July 6th, she
revoked that clause and appointed Mr. Farber and Dr. Reich-
ard, executors, and in case administration was necessary in
Illinois, she appointed Samuel Adams for that State.   She did
name Dr. Reichard trustee for her son Wynkoop, and ex-
pressly required her executors to give bond.   So it is evident
she was not altogether under the influence of Bricker or Far-
ber, and if she had been under the influence of Bricker it ap-
parently ceased, as by her codicil she not only left him out,
but directed her executors to contest any bill he might bring
against her estate.   There are some expressions in the letter

which could be used with effect to the detriment of the writer before a jury, but when taken as a whole it certainly would not sustain a verdict in favor of the appellees on any of the issues sought to be made by the petition. It is not alleged in the petition that the statements made in the letter as reasons for a change of the will were not true, but it alleges that Mr. Bricker "for a long number of years had been the trusted confidential business agent and personal friend of the said Margaret Shipley, and the executor named in both her former wills." The letter was written to him and he was requested to make the suggestion of the changes to Mrs. Shipley. If the object of the letter was in any way to take advantage of or impose on Mrs. Shipley, it is rather remarkable that it was sent to her trusted and confidential friend who was the executor named in the wills already made. It does undoubtedly manifest a desire on the part of Mr. Farber to become one of the executors, but instead of urging it in person he wrote to Mr. Bricker, who was personally interested in the matter himself. So far as the letter showed, Farber did not propose to take the will he was to draw to Mrs. Shipley, but instructed Bricker how it should be executed and it cannot be presumed that the codicil, which expressly confirmed the will in all other respects, was in any way influenced by that letter, as Bricker was by it omitted, as an executor.

But if we give to the letter all of the meaning claimed for it by the appellees, it was as we have seen, in the possession of the attorneys for the caveators of the Davis caveat, and if the Izers had sought such information as was incumbent on them before signing a paper such as exhibit B they could have ascertained the facts that were then relied on and would doubtless have been permitted to see the letter, if they were in good faith seeking to ascertain the facts. But they apparently made no effort to find out what information their brother and sister relied on. Apparently they did not even seek information from the attesting witnesses before filing their caveat, although in the original petition they attacked the execution of the will. They allege that Margaret Shipley was an uneducated person,

unable to read intelligently, and scarcely able to write any-
thing except her own name, and that she did not know or under-
stand the contents of the will or codicil.   If what they said in
Exhibit B as to their knowledge of the circumstances and sur-
roundings of their mother was true, they certainly knew her
capacity to understand the will and codicil as well when they
signed that paper as they do now.   Although they presumably
knew the contents of the will of January 20th, 1900, as they
say they will furnish a copy of it, they do not state them or
file a copy, but content themselves with general allegations,
and they admit that it and the one of April 25th, 1900, are
" substantially similar as to the devises and bequests to the
children of Margaret Shipley," but " are substantially unlike
as affecting the said Edwin J. Farber."   So without prolong-
ing this opinion further, it will be seen from what we have
intimated that in our opinion the appellees have not sufficiently
explained their conduct with reference to Exhibit B to author-
ize the Orphans' Court to entertain this caveat.   We do not
deem it necessary to say more than we said in the former
opinion about Exhibit A and Exhibit C.

Parties who not only take a decided position on one side of
a controversy in a Court, but solemnly allege that statements
made by the other side are false and unfounded in fact, and in
order to give more effect to their own statements assert their
opportunity to know whereof they speak, must not only show
that they have since acquired further information, which had
been withheld from them by the parties complained of, or
through their instrumentality, but they must show that they
had used at least reasonable diligence to acquaint themselves
with the real facts, before they voluntarily placed themselves
in the attitude of branding as false and unfounded what they
afterwards rely on for relief in reference to the same subject-
matter, and if they do not, they cannot complain, if they are
denied further relief.   If parties to proceedings in Court are to
be permitted to thus shift their positions, as some whim or
caprice may lead them to do, the end of litigation would be as
uncertain as such unstable litigants can make it, and

-although it is to be regretted if the doctrine we have announced -does at any time prohibit investigation in a meritorious case, it is one which is well established by the authorities and of -great importance to the proper administration of the law, es- -pecially in matters affecting wills.

The Orphans' Court should have dismissed the petition and for error in not doing so, the order of September 24th, 1902, will be reversed.

*Order reversed and petition dismissed,*
*the appellees to pay the costs.*

(Decided January 22nd, 1903.)